Juan **HERNANDEZ**, Appellant,

v.

**TEXAS WORKFORCE COMMISSION and Greyhound Lines, Inc.,** Appellees.

No. 04–99–00352–CV.

Court of Appeals of Texas, San Antonio.

Jan. 26, 2000.

Rehearing Overruled Feb. 16, 2000.

Israel M. Reyna, Texas Rural Legal Aid, Inc., Laredo, for appellant.

David L. Phillips, Phillips & Akers, P.C., Houston, Seth O. Smith, Asst. Atty. Gen., Taxation Division, Austin, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

Opinion by: PHIL HARDBERGER, Chief Justice.

Juan Hernandez ("Hernandez") appeals the Texas Workforce Commission's decision disqualifying him from the receipt of unemployment benefits. Hernandez raises

four issues in his brief, contending: (1) the act which the TWC found to be misconduct and on which the TWC based its disqualification decision was not the stated reason for Hernandez's discharge; (2) the stated reason for Hernandez's discharge was not misconduct; (3) the trial court could not affirm the TWC's decision on an act of misconduct that differed from the stated reason for Hernandez's discharge; and (4) the trial court's judgment affirming the TWC's decision on a basis other than the stated reason for Hernandez's discharge violated his due process rights. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL HISTORY

Hernandez was employed by Greyhound Lines, Inc. ("Greyhound") as a customer service associate/ticket agent. Louis Ibanez ("Ibanez") was the terminal manager at the location where Hernandez worked, and Diana Navarro ("Navarro") was Hernandez's immediate supervisor.

Ibanez ordered Navarro to conduct an audit on the terminal's phone bill after she discovered that numerous phone calls were being made to Renville, Minnesota. After completing the audit, it was discovered that approximately 300 phone calls had been made to Renville, at a cost of approximately $500. Around the same time, an unemployment claim form was received from Belia Martinez ("Martinez"), who lived in Renville, Minnesota. Martinez had been a co-worker and close friend of Hernandez before she was discharged from Greyhound. Martinez was also a friend of Navarro.

Prior to the date Martinez was discharged, she would take leaves of absence to work in the fields in Minnesota as a migrant worker. While she was on leave, Hernandez would call her while he was on duty. Hernandez testified that Navarro was aware that he was making these calls, and, on occasion, Navarro would speak to Martinez when he called her. Hernandez and Martinez testified that Navarro would joke with them upon receiving the phone bills as to who was going to pay for the phone calls.

After Ibanez discovered the history of the phone calls, he confronted Hernandez. There is a conflict in the evidence as to the specificity of Ibanez's initial inquiry. Ibanez testified that he specifically asked Hernandez whether he recognized the phone calls to Renville. Hernandez testified that Ibanez asked if he was aware of long distance phone calls made during his shift without specifying a number or city. Hernandez initially denied any knowledge. Hernandez explained his initial denial was due to the vague nature of the question, and he did not believe he was responsible because everyone used the phone for personal reasons. Hernandez testified that he admitted that he made the phone calls when Ibanez specified the calls to Martinez. Ibanez testified that Hernandez only admitted that he made the phone calls when Ibanez showed him Martinez's name with a Renville address from an unemployment claim form.

Hernandez filed a claim for unemployment compensation. Hernandez's claim states that he was discharged because he made personal long distance calls. Greyhound responded to the initial claim, stating: "Numerous long distance calls were made to Renville, Mn. only when Juan Hernandez was on duty, that is the reason why Juan's employment with Greyhound was terminated." Hernandez's initial claim was denied, and he appealed to the Appeal Tribunal.

The Appeal Tribunal reversed the initial claim determination, holding that Hernandez's actions did not rise to the level of misconduct connected with his work. The Appeal Tribunal's decision states:

> Although there are specific points on which the claimant and the employer disagree concerning the use of the telephone, the testimony presented here convinces me the claimant knew he was violating the employer's policy. However, the evidence also establishes that he did so with the approval of his immediate supervisor. Therefore, it cannot be

held that his actions rise to the level of misconduct connected with the work.

The findings of fact in the Appeal Tribunal decision do not mention the confrontation between Ibanez and Hernandez when Hernandez initially denied having made the phone calls.

Greyhound appealed the Appeal Tribunal's decision to TWC. In its letter requesting the appeal, Greyhound also asked that it be permitted to present a new witness to testify. It appears from the wording of the request that Greyhound wanted to call Navarro to testify. It is unclear from the record whether this request was granted.

The TWC reversed the Appeal Tribunal decision, in a 2–1 decision joined by the Chairman and the Commissioner Representing Employers. The findings of fact in the TWC's decision recite that Hernandez was discharged for dishonesty. The findings of fact state: "The claimant's act of dishonesty occurred when he initially, upon being confronted by the employer, denied having any knowledge as to the calls being made when he in fact made them." The TWC's decision concludes: "that the claimant's failure to fully and honestly cooperate in the employer's investigation of the long-distance calls constituted intentional wrongdoing and thus misconduct." The Commissioner Representing Labor dissented from the ruling. The dissent states:

> The evidence clearly establishes that claimant used the employer's phone system for personal calls. The evidence establishes this was a common practice. While the claimant denied responsibility for all calls when first questioned, he promptly admitted responsibility for the calls which he did make when they were specified.

Hernandez appealed the TWC's decision to the trial court. The transcript of the testimony of the witnesses at the TWC hearing was not presented as evidence at trial. Only one page of Ibanez's testimony and one page of Hernandez's testimony before the TWC was admitted. It appears

from the TWC's decision and dissent that testimony was presented by Ibanez and Hernandez at the TWC hearing regarding Hernandez's initial denial. As previously noted, the two witnesses presented conflicting testimony at trial regarding the specificity of Ibanez's initial inquiry. The trial court affirmed the TWC's decision, and Hernandez timely filed this appeal.

## STANDARD OF REVIEW

 Judicial review of a TWC decision is by trial de novo. TEX. LABOR CODE ANN. § 212.202 (Vernon 1996). A trial de novo review of a TWC decision requires the court to determine whether there is substantial evidence to support the TWC's ruling. *Mercer v. Ross,* 701 S.W.2d 830, 831 (Tex.1986); *Direct Communications, Inc. v. Lunsford,* 906 S.W.2d 537, 541 (Tex. App.—Dallas 1995, no writ); *Arrellano v. Texas Employment Comm'n,* 810 S.W.2d 767, 769 (Tex.App.—San Antonio 1991, writ denied). Reviewing courts are not bound by, nor do they review, the TWC's findings of fact. *Direct Communications, Inc. v. Lunsford,* 906 S.W.2d at 541. The trial court rules on the evidence admitted at the trial de novo—not the evidence presented at the TWC hearing. *Mercer,* 701 S.W.2d at 831.

 The determination of whether the TWC's decision is supported by substantial evidence is a question of law. *Arrellano,* 810 S.W.2d at 770. The TWC is the primary fact-finding body, and the reviewing court may not substitute its judgment for that of the agency on controverted issues of fact. *Id.* The reviewing court may only set aside the TWC's decision if the decision was made without regard to the law or the facts and therefore was unreasonable, arbitrary or capricious. *Mercer,* 701 S.W.2d at 831. It is for the reviewing court to decide whether the evidence is such that reasonable minds could not have reached the conclusion the agency must have reached in order to justify its actions. *Direct Communications, Inc. v. Lunsford,* 906 S.W.2d at 541.

### REASON FOR DISCHARGE

In his first issue, Hernandez contends that the TWC's decision that he engaged in misconduct by failing to honestly cooperate with Greyhound's investigation is unreasonable, arbitrary, or capricious, and was made without regard to the facts or the law, because Greyhound's stated reason for Hernandez's discharge was the making of personal long distance calls. Hernandez asserts that the TWC's decision, therefore, disqualified him from the receipt of benefits for an act of purported "misconduct" that was not the reason given for his discharge. In his second issue, Hernandez asserts that the trial court could not affirm the TWC's decision based on a finding that Hernandez was discharged for misconduct because he made personal long distance phone calls.

The TWC responds by contending that there is substantial evidence to support the TWC's decision that Hernandez was discharged for dishonesty, which is an act of misconduct disqualifying him from the receipt of benefits. The TWC contends that Hernandez had the burden of showing the absence of substantial evidence to support the decision on any possible basis for upholding the decision and not solely on TWC's stated basis.

■ TWC is correct that the Texas Supreme Court held in *Texas Employment Comm'n v. Hays* that if TWC's conclusion is correct, whether it proceeded to that conclusion on an erroneous theory or gave an unsound reason for reaching it is immaterial. 360 S.W.2d 525, 527 (Tex.1962). However, that rule does not mean that a trial court can determine a material controverted fact question which was not passed on at all by TWC in order to sustain the TWC's decision. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939) (cited as support in *Hays* ). As clarified by the Austin court of appeals, the principle that a reviewing court is obligated to sustain an agency order on any legal basis shown in the record is sometimes confused with the erroneous idea that a reviewing court must sustain an agency order on any "valid basis" shown in the record. *Public Utility Com'n of Texas v. Southwestern Bell Telephone Co.*, 960 S.W.2d 116, 121 & n. 7 (Tex.App.—Austin 1997, no writ). The principle does not mean that the reviewing court may sustain the agency upon a factual basis not passed upon by the agency. *Id.*

TWC did not decide whether Hernandez's making of personal long distance calls was misconduct. This was a disputed factual question that the Appeal Tribunal resolved in Hernandez's favor. Rather than addressing that factual question, TWC found that Hernandez's initial denial of having made the calls constituted misconduct. Since TWC did not decide whether the act of making the personal long distance calls constituted misconduct, we may not sustain the TWC's decision on that factual basis.

■ We agree that the TWC must base its disqualification decision on the same act of misconduct for which Greyhound terminated Hernandez. *See Hawkins v. Leach*, 115 Ohio App. 259, 270, 185 N.E.2d 36, 44 (1961); *see also Green v. District Unemployment Comp. Bd.*, 346 A.2d 252, 256 (D.C.1975) (finding of misconduct must be based fundamentally on reasons specified by the employer for the discharge); *Voss v. Review Bd. of Employment*, 533 N.E.2d 1020, 1021 (Ind.Ct.App.1989) (agency decision must be based on stated grounds for discharge); *Mine Safety Appliances Co. v. Commonwealth Unemployment Comp. Bd. of Review*, 55 Pa.Cmwlth. 517, 521 423 A.2d 798, 800 (1980) (denial of compensation must be based on stated reason for discharge not other act constituting misconduct). Under section 207.044, an individual is disqualified for benefits if the individual was discharged for misconduct. TEX. LABOR CODE ANN. § 207.044 (Vernon 1996). This provision contemplates that the reason the individual was discharged must amount to misconduct, not that the individual was discharged and, at some

time while he was employed, he engaged in misconduct. The TWC's decision disqualifying Hernandez must be based on the same ground that Greyhound based its decision to discharge Hernandez.

■■■■ The next question that arises is whether Greyhound discharged Hernandez for making the personal phone calls or whether Greyhound discharged Hernandez for his initial denial of having made the calls. The decision of the TWC carries a presumption of validity. *See Mercer,* 701 S.W.2d at 831. Absent any controverting evidence, we must presume that Greyhound introduced evidence before the TWC, stating that Hernandez's initial denial was the basis for his discharge. There is no controverting evidence in the record before us. Hernandez did not introduce the record of the TWC's proceedings to demonstrate that Greyhound failed to introduce evidence that Hernandez's initial denial of having made the phone calls was the basis for his discharge. *See Nuernberg v. Texas Employment Comm'n,* 858 S.W.2d 364, 365 (Tex.1993) (individual items within the agency record may be independently introduced at trial pursuant to the Texas Rules of Evidence); *Direct Communications, Inc. v. Lunsford,* 906 S.W.2d at 540 (evidence heard by agency, while not per se admissible, may be admissible depending upon its merits under the general rules of evidence); *Haas v. Texas Employment Comm'n,* 683 S.W.2d 462, 464 (Tex.App.—Dallas 1984, no writ) (evidence of commission hearing to be considered when properly introduced in trial court). In addition, Ibanez testified at trial that he mentioned the denial of the phone calls as a basis for Hernandez's discharge before the TWC. Therefore, the evidence before the trial court was insufficient to rebut the presumption that the TWC's decision was valid and that the TWC's decision disqualifying Hernandez was based on the reason given by Greyhound for his discharge.

## GROUNDS FOR TRIAL COURT'S DECISION

In his third issue, Hernandez contends that the trial court could not affirm the TWC's decision for reasons not presented to the TWC. As previously noted, however, Ibanez testified that he mentioned the denial of the phone calls as a basis for Hernandez's discharge before the TWC. In the absence of controverting evidence, we must presume that the initial denial of the phone calls was the basis for the discharge that was presented to the TWC.

## DUE PROCESS

In his fourth issue, Hernandez asserts that his due process rights were violated if the TWC's decision is based on an alleged act of misconduct that differs from the alleged act of misconduct for which he was discharged. Hernandez relies on *Gonzales v. Texas Employment Commission* to support this contention. 653 S.W.2d 308, 310–11 (Tex.App.—San Antonio 1983).

In *Gonzales,* the court's concern was that the absence of notice that the employer based its discharge decision on "misconduct" rather than "voluntary termination of employment," deprived the employee of the opportunity to adequately prepare his side of the controversy. *See id.* The court stated that with proper notice, the employee would have introduced additional evidence. *Id.* at 311. In this case, Hernandez does not contend that he was unable to present his side of the controversy with regard to his initial denial of having made the phone calls. It is clear from the dissenting opinion to the TWC's decision that Hernandez was afforded this opportunity and convinced at least one of the members of the decision panel that his initial denial did not amount to misconduct.

## CONCLUSION

The evidence before the trial court was insufficient to rebut the presumption that the TWC's decision was valid and that the TWC's decision disqualifying Hernandez was based on the reason given by Grey-

hound for his discharge. The trial court's judgment is affirmed.

SARAH B. DUNCAN, Justice, concurring in the judgment only.