CITY OF HOUSTON, Appellant,

v.

Clifton MORRIS, III, and Texas Workforce Commission, Appellees.

No. 01–99–00806–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 8, 2000.

Rehearing Overruled July 26, 2000.

Marcus Dobbs, Houston, for appellant.

Mario Caballero, Houston, Anthony Aterno, Austin, for appellee.

Panel consists of Justices O'CONNOR, TAFT, and SMITH (Retired).*

## OPINION

MICHOL O'CONNOR, Justice.

The City of Houston, the appellant, appeals from the award of unemployment benefits by the Texas Workforce Commission (TWC), the appellee, to Clifton Morris, also an appellee. We affirm.

## Factual and Procedural Background

Morris was a Police Communications Officer for the City. Between July 1995 and June 1996, Morris committed numerous violations of various rules and regulations of the Civil Service Commission. The violations included fraternizing with another employee, use of City terminals for personal reasons, sending a negative message to the mobile computer of a patrol officer who had issued Morris a traffic citation, and violation of the City's sick leave policy.

In May 1996, the City began investigating Morris's conduct. Each investigation took less than two months to complete. In September 1996, the City held disciplinary meetings with Morris. On October 30, 1996, the police chief asked the City's legal department to review Morris's file. On November 18, 1996, the City and Morris met[1] to discuss the allegations against him. On March 14, 1997, one year and eight months after the first incident and nine months after the last incident, the City placed Morris on indefinite suspension without pay.

A hearing was held before a TWC hearing officer who upheld the initial determination to grant Morris unemployment benefits. The TWC Appeal Tribunal upheld that decision. The City appealed, and the issue was tried to the district court in April 1999. The trial court entered judgment in favor of Morris and the TWC. This appeal by the City followed.

## Discussion

On appeal, the City contends: the trial court incorrectly concluded that the TWC's decision was supported by substantial evidence; and an employee who has committed statutorily-defined misconduct should be denied unemployment benefits without regard to a time limit within which the employer must discharge the employee for the misconduct.

### A. Standard of review

■■■ The trial court reviews a TWC decision de novo to determine whether there is substantial evidence to support the TWC's decision. Tex. Lab.Code § 212.202(a); Mercer v. Ross, 701 S.W.2d 830, 831 (Tex.1986); City of Houston v. Tippy, 991 S.W.2d 330, 333 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Under the substantial evidence standard of review, the issue is whether the evidence introduced before the trial court shows facts in existence at the time of the TWC's decision that reasonably support the decision. Collingsworth Gen. Hosp. v. Hunnicutt, 988 S.W.2d 706, 708 (Tex.1998).

■■■ The TWC's ruling carries a presumption of validity. Mercer, 701 S.W.2d at 831; Tippy, 991 S.W.2d at 333. When the court examines whether there is substantial evidence to support an agency's decision, it determines whether reasonable minds could have reached the same conclusion the agency reached. Dotson v. Texas State Bd. of Medical Examiners, 612 S.W.2d 921, 922 (Tex.1981); Sanchez v. Huntsville Indep. Sch. Dist., 844 S.W.2d

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. The City refers to this meeting as a "Loudermill hearing." A Loudermill hearing is held after a determination is made by the City regarding an employee's alleged violations. The employee, any attorneys, and those who investigated the alleged violations attend the hearing. The purpose of the hearing is to give the employee an opportunity to present information the employee may feel is helpful to his or her case.

286, 290 (Tex.App.—Houston [1st Dist.] 1992, no writ). The determination of whether the TWC's decision was supported by substantial evidence is a question of law. *Tippy,* 991 S.W.2d at 333.

The trial court may not set aside a TWC decision merely because it would reach a different conclusion. *Mercer,* 701 S.W.2d at 831; *Tippy,* 991 S.W.2d at 333. It may do so only if it finds the TWC's decision was made without regard to the law or the facts, and, therefore, was unreasonable, arbitrary, or capricious. *Mercer,* 701 S.W.2d at 831; *Tippy,* 991 S.W.2d at 333. If the TWC applied an improper legal standard, that standard may be reviewed by the court. *Mercer,* 701 S.W.2d at 831.

### B. Morris' misconduct and the TWC's conclusion

The Texas Labor Code provides, "An individual is disqualified for benefits if the individual was discharged for misconduct *connected with the individual's last work.*" Tex. Lab.Code § 207.044 (emphasis added). The TWC Appeal Tribunal concluded as follows:

> Although the evidence presented to this Tribunal clearly shows that the claimant [Morris] was in violation of the employer's policies and that his actions were against the interests of the employer, the evidence shows that the claimant's termination was due to an accumulation of incidents and not an isolated incident occurring over a span of one year. Although the employer's policy calls for such lengthy dismissal process, *the evidence shows that the incidents were far too remote in time from the actual discharge to constitute work-connected misconduct.* Therefore, the determination qualifying the claimant under Sec-

tion 207.044 of the Act, will be affirmed. [Emphasis added].

The City asserts that misconduct alone provides the basis for denial of compensation benefits. Therefore, the City argues, the TWC may allow or deny unemployment benefits based only on a determination of whether the employee has committed misconduct as defined by the Texas Labor Code.[2] The City asserts that although the TWC found that Morris committed misconduct, it incorrectly applied a "remoteness" standard to determine the misconduct was not work-related. The City concludes the trial court acted arbitrarily in upholding the TWC's decision. We disagree.

The City cannot meet its burden merely by casting doubt on the TWC's decision. To meet its burden, the City must produce evidence that conclusively negates all reasonable support for the agency's decision, on any ground offered. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984). The City's argument on appeal focuses solely on whether Morris committed misconduct. The City ignores the clear language of Labor Code section 207.044, which requires that the misconduct be "connected with the individual's last work." *See* Tex. Lab.Code § 207.044.

The parties do not refer us to any opinions construing the phrase "connected with last work." Our research reveals only one Texas opinion construing the phrase, although in a different context. In *Collingsworth Gen. Hosp. v. Hunnicutt,* the issue on appeal was whether the employee's misconduct had to occur while the employee was on duty or while on the employer's premises, to satisfy the "connected with" requirement.[3] 988 S.W.2d at

---

2. " 'Misconduct' means mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the

orderly work and the safety of employees." Tex. Lab.Code § 201.012.

3. In *Collingsworth,* Fredonia Hunnicutt was fired from her job at Collingsworth General Hospital after the hospital learned that she

709. The Supreme Court concluded that neither circumstance was required, depending on the circumstances. *Id.* at 709–10.

Here, we must determine whether the TWC reasonably interpreted "connected with last work" to mean that an employee's act or omission will not support a finding of statutorily-defined misconduct if the act or omission was too remote in time from the date of discharge.

The TWC relied on the following internal precedent:

Where the most recent act of misconduct on a claimant's part alleged by the employer was shown to have occurred three months prior to the claimant's discharge, such act or omission, even if proved by a preponderance of the evidence, will not support a finding of misconduct with the work for which the claimant was discharged, because it was too remote in time from the discharge. (Appeal No. 243–CA–76.) [4]

Although the City contends this precedent is not the law and has never been adopted as part of the administrative code, the City points to more recent precedent:

As a general rule, misconduct will not be found where the precipitation incident is too remote in time from the date of the work separation. This general rule does not apply, however, if the delay is caused by established procedures designed to protect the worker from possi-

ble erroneous separation decisions. Here, the claimant was discharged four months after the precipitating incident. During that time, however, the employer conducted an internal investigation, reviewed the recommendation to terminate through the chain of command, and allowed the claimant to complete a pre-termination hearing procedure. HELD: Here, the delay caused by the employer's reasonable pre-termination procedures did not render the discharge too remote in time from the final incident. Discharge for misconduct was connected with the last work. (Appeal No. 97–008947–10–082097).

 We agree with the TWC that an employee's act or omission cannot be too remote in time from the discharge to constitute misconduct that is "connected with" the employee's last work. We hold that if the discharge is remote in time from the misconduct, then the burden is on the employer to show the delay was reasonable. *See Redalen v. Farm Bureau Life Ins. Co.*, 504 N.W.2d 237, 239 (Minn. Ct.App.1993) (delay between misconduct and discharge may negate a causal relation between the misconduct and discharge, unless circumstances explain the delay); [5] *Tundel v. Unemployment Compensation Board of Review*, 44 Pa.Cmwlth. 312, 404 A.2d 434, 436 (1979) (conduct or an incident at work that is temporally remote from a claimant's termination cannot serve

---

had pled guilty to the felony charge of aggravated assault. The assault charge stemmed from Hunnicutt's slashing another woman with a box cutter. 988 S.W.2d at 708. The assault did not occur while Hunnicutt was on duty or on the hospital's premises. The Texas Employment Commission (TEC) denied Hunnicutt's claim for unemployment benefits, concluding that her actions constituted "misconduct connected with [her] last work" under Section 207.044(a) of the Texas Labor Code. The trial court sustained the TEC's decision denying Hunnicutt's claim. On appeal, Hunnicutt contended her crime was not "connected with" her work because it was committed while off-duty. The court of appeals reversed the judgment of the trial court, and rendered judgment for Hunnicutt.

4. This appeal number is a reference to a TWC opinion. The TWC adopts its decisions as precedent to guide its future decisions. The decisions adopted as precedent are incorporated into the TWC's Appeals Policy and Precedent Manual and are referenced internally by an appeal number.

5. Farm Bureau discharged Redalen approximately three years after alleged misconduct. 504 N.W.2d at 239. The appellate court determined the delay was not too remote because Farm Bureau proved a valid reason for the delay. *Id.* at 240.

as a basis for denial of benefits due to willful misconduct).[6]

Here, the City did not show why it took one year and eight months after the first incident, and nine months after the last incident, to discharge Morris. The City's witnesses explained in general terms some of the procedures that are followed when an employee is investigated and discharged. At the appeal hearing before the TWC, the Internal Affairs sergeant who conducted the investigations into Morris's rule violations stated an investigation does not take a year to complete, but it may take a year to obtain a decision on whether an employee should be terminated. At the TWC appeal hearing, Morris testified that, based on the September 1996 meetings, he thought his violations would not accumulate because they occurred at different police divisions and he would be suspended for only 20 days. The documentation from the September 1996 meetings stated Morris had a "strong" performance rating, and there had been no further incidents of misconduct since his final transfer (which date is not in the record). He said he did not know he would be fired until he received the March 14, 1997 letter.

Although the City attempted in general terms to explain its procedures, it did not explain, or prove the reasonableness of, the delay *in this specific case.* Therefore, the City did not meet its burden of conclusively negating all reasonable support for the TWC's decision. We conclude that the TWC did not act without regard to the law or the facts in its decision, and, therefore, was not unreasonable, arbitrary, or capricious.

We overrule the City's two issues.

We affirm the trial court's judgment.

---

**6.** Tundel was fired 25 days after the misconduct. 44 Pa.Cmwlth. at 316, 404 A.2d 434. The appellate court determined there was no explanation in the record to explain the delay; therefore, the discharge was too remote from the misconduct. *Id.* at 317, 404 A.2d 434.