In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00031-CV


______________________________




TEXAS WORKFORCE COMMISSION AND


RODNEY PETERSON, Appellants


V.



BL II LOGISTICS, L.L.C., Appellee




 


On Appeal from the 62nd Judicial District Court


Hopkins County, Texas


Trial Court No. CV 36,118




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



Procedural History

 Rodney Peterson was terminated from his position as a truck driver for BL II Logistics,
L.L.C. (BL). Peterson applied for unemployment benefits; the Texas Workforce Commission
(TWC) ruled Peterson ineligible for benefits. However, when Peterson appealed that ruling to the
TWC's appeal tribunal, the TWC reversed its prior decision and found Peterson eligible for benefits. 
BL then appealed the tribunal's ruling to the 62nd Judicial District Court in Hopkins County. See
Tex. Lab. Code Ann. § 212.202 (Vernon 2006). The trial court found there was not substantial
evidence to support the tribunal's ruling and reversed the TWC's decision. The TWC, representing
Peterson, has appealed the trial court's judgment to this Court. After reviewing the record, applicable
caselaw, and oral argument of the parties, we reverse the trial court's judgment. 

Factual Background

 Peterson was employed by BL to deliver aluminum logs, comparable in size to telephone
poles, for Hydro Aluminum, BL's sole customer. Peterson indicated that while he was stopped at
a fast food restaurant, he was approached in the parking lot by another truck driver who was also
carrying a load of aluminum logs which were similar to those Peterson was hauling for Hydro. 
Peterson said the unidentified driver related that he was attempting to sell his load; by way of
explanation, the truck driver represented that he had missed his cargo drop-off appointment and
needed to empty his load of aluminum logs in order to carry another load. Peterson said he told the
truck driver that he did not have enough money with which to purchase the load but called his
brother (who is also a truck driver). Peterson's brother then came to the parking lot, met with the
other driver, and, as far as Peterson knew, purchased the other driver's load. Shortly after these
events, Peterson was asked to meet with Billy Joe McCracken, the owner of BL, and Bill Painter,
logistic coordinator of Hydro. After hearing Peterson's story, Painter said that he was going to
conduct his own investigation of the matter and that until this investigation had been completed,
Peterson was not to return to Hydro's property. Peterson said he was told by McCracken that
Peterson still had his job if Peterson had told the truth; McCracken contradicted that statement,
testifying that after the meeting, he had told Peterson that he had been terminated. 

 McCracken testified that he had fired Peterson because Peterson's actions amounted to a
violation of the trust necessary between Hydro and BL. McCracken said he was "shocked" by the
amount of knowledge Peterson possessed regarding the aluminum scrap business, particularly
pertaining to the values of the aluminum logs on the market. McCracken maintained that the "breach
of trust" by Peterson was sufficient cause for him to fire Peterson. 

Trial de novo--"Hybrid Review" 

 The trial court reviews de novo a TWC decision to determine whether there is substantial
evidence to support the TWC's decision. Tex. Lab. Code Ann. § 212.202(a). "Hybrid review" is
the characterization given to the kind of substantial evidence review to be given by the courts under
this statute: 

 Under this hybrid review, the trial judge "conducts an evidentiary hearing for the limited
purpose of determining 'whether at the time the questioned order was entered there then
existed sufficient facts to justify the agency's order.'" Bd. of Tr. of Big Spring Firemen's
Relief & Ret. Fund v. Firemen's Pension Comm'r, 808 S.W.2d 608, 612 (Tex. App.--Austin
1991, no writ) (citing Gerst v. Nixon, 411 S.W.2d 350, 354 (Tex. 1966)); see Firemen's &
Policemen's Civil Serv. Comm'n v. Brinkmeyer, 662 S.W.2d 953, 956 (Tex. 1984) ("The
reviewing court must inquire whether the evidence introduced before it shows facts in
existence at the time of the administrative decision which reasonably support the decision."). 
While the trial judge "must hear and consider evidence to determine whether reasonable
support for the administrative order exists," the "agency itself is the primary fact-finding
body, and the question to be determined by the trial court is strictly one of law." Brinkmeyer,
662 S.W.2d at 956. 


Palmer v. Shaw, No. 05-04-00941-CV, 2006 Tex. App. LEXIS 817, at *2-3 (Tex. App.--Dallas
Feb. 1, 2006, no pet.) (mem. op.).

What Is Substantial Evidence?

 Judicial review of a TWC tribunal ruling is "by trial de novo based on the substantial
evidence rule." Tex. Lab. Code Ann. § 212.202. "Substantial evidence" is more than a scintilla,
but less than a preponderance of the evidence. City of Houston v. Tippy, 991 S.W.2d 330, 334 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). Under the substantial evidence review, the issue is
whether the evidence introduced before the trial court reveals facts which were in existence at the
time of the TWC's ruling which reasonably support the decision made by the TWC tribunal. 
Collingsworth Gen. Hosp. v. Hunnicutt, 988 S.W.2d 706, 708 (Tex. 1998); City of Houston v.
Morris, 23 S.W.3d 505, 507 (Tex. App.--Houston [1st Dist.] 2000, no pet.). The burden is on the
party seeking to set aside a TWC decision to prove that the ruling is not supported by substantial
evidence. Mercer v. Ross, 701 S.W.2d 830, 831 (Tex. 1986). In determining whether there is
substantial evidence to support an agency's decision, the trial court determines whether reasonable
minds could have reached the same conclusion as that reached by the administrative agency. Dotson
v. Tex. State Bd. of Med. Examiners, 612 S.W.2d 921, 922 (Tex. 1981); Morris, 23 S.W.3d at 507. 
Whether the TWC's decision was supported by substantial evidence is a question of law. Morris,
23 S.W.3d at 508. The trial court may set aside such a TWC decision only if the court determines
that the decision was made without regard to the law or the facts and, therefore, was unreasonable,
arbitrary, or capricious. Mercer, 701 S.W.2d at 831; Morris, 23 S.W.3d at 508. Because the
determination of whether the TWC's decision was supported by substantial evidence is a question
of law, we review de novo the trial court's determination. See El Paso Natural Gas Co. v. Minco Oil
& Gas, Inc., 8 S.W.3d 309, 312 (Tex. 1999). We look at the evidence presented to the trial court,
not to the agency record. Nuernberg v. Tex. Employment Comm'n, 858 S.W.2d 364, 365 (Tex.
1993). A guiding principle of the substantial evidence rule is that when evaluating the evidence, the
courts must use a reasonableness standard. Firemen's & Policemen's Civil Serv. Comm'n v.
Brinkmeyer, 662 S.W.2d 953, 956 (Tex. 1984); Gerst v. Nixon, 411 S.W.2d 350, 354 (Tex. 1966);
Fire Dep't of City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664 (1949). If,
based on the evidence, any reasonable person could have come to the same conclusion as the TWC,
then the agency's decision must be upheld, even if the reviewing court would have reached a
different conclusion. See Potts v. Tex. Employment Comm'n, 884 S.W.2d 879, 882 (Tex.
App.--Dallas 1994, no writ). Even where the agency's decision is shown to be against the great
weight and preponderance of the evidence, a court is bound, as a matter of law, to affirm the agency
decision so long as a reasonable person could have reached the conclusion at which the agency
arrived. Tex. Employment Comm'n v. Ryan, 481 S.W.2d 172, 175 (Tex. Civ. App.--Texarkana
1972, no writ).

TWC Decision Presumed Valid

 A TWC decision regarding unemployment benefit payments carries a presumption of validity
with it. Hunnicutt, 988 S.W.2d at 708. The party seeking to set the decision aside must assume the
burden of showing that it was not supported by substantial evidence. Id. We may set aside the
decision only if it was made without regard to the law or the facts and, therefore, was unreasonable,
arbitrary, or capricious. Id.; Kellum v. Tex. Workforce Comm'n, 188 S.W.3d 411 (Tex. App.--Dallas
2006, no pet.) (Two years after hiring, the employer fired Kellum for having represented on his
application for employment he had not been convicted of a felony. In fact, Kellum had pled guilty
to a felony and had served out deferred adjudication; the TWC found that this was misconduct and
denied benefits, a decision affirmed by the trial court. The appellate court found that no evidence
of misconduct as defined by the Texas Labor Code was shown, and so the TWC erred as matter of
law.).

Evidence Before the Trial Court

 The trial court heard testimony from Peterson and from McCracken the bulk of which is set
out above. In addition to the above rendition, it is noted that there is some conflict in the testimony
as to whether McCracken actually told Peterson that his services had been terminated. Whether or
not this was actually said or not, the impact of it was the same. McCracken quit taking his calls and
gave Peterson no other work, so Peterson assumed that he no longer had a job with BL. Peterson
also testified that he was asked to meet with a Detective Vaughn, in Commerce, to submit to a
polygraph examination; on his arrival to take the test, the detective told Peterson that he had decided
not to conduct the polygraph test because the aluminum logs which Peterson's brother had delivered
were not traced to Hydro, but, rather, had come from somewhere in Houston. Peterson's testimony
that he had not been charged or convicted of any theft crime was not contradicted. 

 McCracken's testimony lines up generally with Peterson's, but McCracken claims that he had
the right to fire Peterson because Peterson's conduct raised a "breach of trust" issue on the part of
Hydro, prompting Hydro to bar Peterson from its premises. Since Hydro was BL's only customer
and because Peterson could not enter onto Hydro's property to pick up loads of aluminum logs,
Peterson could no longer work for BL. McCracken said the incident involving Peterson and his
brother and the second load of aluminum "create[d] apparent apprehension on the part of the shipper
[Hydro] as far as safety of the product or integrity . . . ." McCracken found it "shocking" that
Peterson would have as much knowledge as he demonstrated about the nature of the business in
which Hydro was engaged. McCracken testified he found it illogical or implausible that another
driver just happened to offer to sell Peterson a similar load of aluminum logs and that Peterson's
brother was able to purchase the load, which McCracken said would have been about 43,000 pounds
and worth around $50,000.00. 

 The thrust of McCracken's testimony to the trial court was that Peterson's conduct violated
the "trust" between Hydro and BL, and thus warranted his firing. The TWC claims the "trust" issue
could not be before the trial court because it had not been ruled on or addressed by the appeal
tribunal. This appears to be correct: 

 [T]he principle that a reviewing court is obligated to sustain an agency order on any
legal basis shown in the record is sometimes confused with the erroneous idea that
a reviewing court must sustain an agency order on any "valid basis" shown in the
record. Public Utility Com'n of Texas v. Southwestern Bell Telephone Co., 960
S.W.2d 116, 121 & n.7 (Tex. App.--Austin 1997, no writ). The principle does not
mean that the reviewing court may sustain the agency upon a factual basis not passed
upon by the agency. Id.

Hernandez v. Tex. Workforce Comm'n, 18 S.W.3d 678, 682 (Tex. App.--San Antonio 2000, no pet.). 
We do not need to reach a decision on whether the trial court could properly consider McCracken's
claim of a violation of trust or whether such a claim was presented to the TWC. Rather, we find the
trial court erred in reversing the TWC's decision. 

 During the hearing, the TWC offered into evidence a certified copy of the tribunal's ruling;
we have not found any exhibits submitted to this Court as part of the reporter's record, but the clerk's
record does contain a copy of the tribunal's ruling. The TWC appeal tribunal's findings of fact
included:

 The claimant [Peterson] was discharged by the employer because the employer's
contracted shipper told the employer that the claimant was no longer allowed on the
shipper's premises or to haul for the shipper. . . . employer refused to indicate why
the shipper would no longer allow the claimant on the shipper's premises or to haul
for the shipper. The claimant denies misconduct . . . .


In its conclusions, the tribunal applies Section 201.012 of the Texas Labor Code's definition of
misconduct, (1) then states, "[t]he evidence establishes that the claimant was discharged for reasons
other than misconduct connected with the work. The employer provided no evidence of misconduct
connected with the work and the claimant denies any misconduct . . . Therefore, the determination
dated December 24, 2003, which disqualified the claimant from benefits . . . will be reversed." 

BL's Burden at the Trial Court Level

 The party seeking to overturn the TWC's decision "must produce evidence that conclusively
negates all reasonable support for the agency's decision, on any ground offered." Morris, 23 S.W.3d
at 508 (citing Brinkmeyer, 662 S.W.2d at 956). In Morris, the city failed to explain the lengthy delay
(several months) between initially suspending/disciplining the employee and ultimately firing her. 
The reviewing courts need not consider "incredible, perjured, or unreasonable testimony because
such evidence is not substantial." However, the reviewing court may go no further than to examine
the evidence for these infirmities. If there is substantial evidence which supports the order, the
courts are bound to follow the discretion of the administrative body. Brinkmeyer, 662 S.W.2d at 956. 

 To overcome the TWC's decision, BL must have demonstrated to the trial court that the
TWC's ruling was not based on substantial evidence. It is not sufficient to present evidence or
testimony to the trial court which only amounts to "a story upon which reasonable minds might
differ." See id. The challenging party must therefore produce evidence that conclusively negates
all reasonable support for the agency's decision, on any possible ground. Id. Thus, the reviewing
court--that is, the trial court--may set aside an agency's decision only if it finds that the decision
was made without regard to the law or the facts and was therefore unreasonable, arbitrary, or
capricious. Mercer, 701 S.W.2d at 831.

 The trial court was bound to sustain the TWC's decision (rendered by its appeal tribunal) if
there were, before the trial court, facts which reasonably supported the TWC's decision. Hunnicutt,
988 S.W.2d at 708. 

 [W]hile the reviewing court is to a certain extent a fact-finder, it may not substitute
its judgment for that of the agency on controverted issues of fact. When there is
substantial evidence which would support either affirmative or negative findings the
administrative order must stand, notwithstanding the agency may have struck a
balance with which the court might differ. The trial court may not set aside an
administrative order merely because testimony was conflicting or disputed or because
it did not compel the result reached by the agency. Resolution of factual conflicts
and ambiguities is the province of the administrative body and it is the aim of the
substantial evidence rule to protect that function. The reviewing court is concerned
only with the reasonableness of the administrative order, not its correctness.


Brinkmeyer, 662 S.W.2d at 956 (citations omitted).

 BL's burden was to counter the TWC's conclusion that BL had not offered any evidence of
misconduct on Peterson's part. At most, in the hearing, McCracken offered testimony about
suspicion. Texas is an "at will" employment State; that is, "absent a specific agreement to the
contrary, employment may be terminated by the employer or the employee at will, for good cause,
bad cause, or no cause at all." County of Dallas v. Wiland, 216 S.W.3d 344, 347 (Tex. 2007). (2) 
Therefore, BL had the ability to terminate its employment of Peterson whether it had suspicions
about his integrity or whether it did not. The ability to terminate and the ability to recover
unemployment benefits are two different questions. Although Peterson's potential involvement in
the transaction between the phantom trucker and Peterson's brother regarding the other aluminum
logs may have given rise for BL to entertain reasonable suspicions of wrongdoing on Peterson's part,
simple suspicion of wrongdoing (either justified or unjustified) is not among the reasons enumerated
in the statute to deny unemployment benefits.

 Upon our review of the record, we cannot say the TWC's decision was unreasonable,
arbitrary, or capricious. See Mercer, 701 S.W.2d at 831. 

 Because reasonable minds could come to the same decision that the TWC reached, the
TWC's decision must be upheld. See Hunnicutt, 988 S.W.2d at 708; Potts, 884 S.W.2d at 882. 

 We reverse the trial court's judgment and render a judgment affirming the TWC's decision
that Peterson is entitled to benefits. 




 Bailey C. Moseley

 Justice


Date Submitted: September 26, 2007

Date Decided: October 12, 2007

1. "Misconduct" is specifically defined by the Act as "mismanagement of a position of
employment by action or inaction, neglect that jeopardizes the life or property of another, intentional
wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted
to ensure the orderly work and the safety of employees." Tex. Lab. Code Ann. § 201.012 (Vernon
2006). This definition is to be construed narrowly. Kellum, 188 S.W.3d at 414 (citing Tex.
Employment Comm'n v. Torres, 804 S.W.2d 213, 216 (Tex. App.--Corpus Christi 1991, no writ)).
2. See also Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998)
(citing Fed. Express Corp. v. Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993) (per curiam);
Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991); Winters v. Houston Chronicle
Pub. Co., 795 S.W.2d 723, 723 (Tex. 1990); Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733,
734-35 (Tex. 1985); E. Line & R.R.R. Co. v. Scott, 72 Tex. 70, 75, 10 S.W. 99, 102 (1888)).