**Opinion issued January 14, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00736-CV

_____

**TIFFANY JOHNSON, Appellant**

**V.**

**HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE, Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-52728**

---

## MEMORANDUM OPINION

This is an appeal from the trial court's order setting aside an award of unemployment benefits. For over 14 years, Tiffany Johnson served as an assistant district attorney for the Harris County District Attorney's Office. During the latter years of Johnson's term of employment, Devon Anderson served as the district

attorney. But in 2016, Anderson lost her reelection bid to challenger Kim Ogg. After the election, Ogg informed Johnson that she would not be offered a position in the new administration but did not state why she had decided to discharge her.

After her discharge, Johnson filed an application for unemployment benefits, which the Texas Workforce Commission granted. The DAO then appealed the TWC's award, arguing that Johnson was disqualified for benefits because she had been discharged for prosecutorial misconduct. But because there had been a 13-month delay between Johnson's misconduct and discharge, the TWC found the former to be "too remote" in time from the latter to disqualify Johnson for benefits and therefore affirmed the award.

The DAO then filed a petition for judicial review in the trial court, and the parties filed cross-dispositive motions. After a hearing on the motions, the trial court found that the TWC had erroneously failed to consider evidence of the reasonableness of the delay between Johnson's misconduct and discharge and that substantial evidence exists establishing the reasonableness of the delay. The trial court therefore denied Johnson's motion, granted the DAO's motion, and reversed the TWC's award.

We reverse the judgment of the trial court and render judgment in favor of Johnson.

**Factual Background**

Johnson began working for the DAO in August 2002. She was discharged in December 2016 for misconduct that occurred over a year earlier in November 2015. The material facts in this appeal concern whether the DAO's delay in discharging Johnson was reasonable.

### *Johnson engages in prosecutorial misconduct resulting in a mistrial*

In November 2015, Johnson prosecuted a case against Robert Yetman, a physician charged with indecency with a child. The trial did not go well for the State. During closing argument, Johnson inferred, without evidentiary support, that Yetman had abused the complainant because of the latter's race, prompting defense counsel to request a mistrial, which the trial court granted. Yetman then filed an application for pretrial habeas relief, arguing that Johnson, seeking to avoid an impending judgment of acquittal, had intentionally goaded the defense into requesting a mistrial and that, as a result, the constitutional prohibition against double jeopardy barred Yetman's retrial. The trial court agreed and granted Yetman's application, which the DAO appealed.

### *After the mistrial, Johnson still receives a positive performance review*

It is undisputed that the statements Johnson made during closing argument of the Yetman trial constitute prosecutorial misconduct for which she could have been fired and disqualified for unemployment benefits. However, after the trial court

granted the mistrial and application for pretrial habeas relief, Johnson was not terminated, considered for termination, or otherwise disciplined by the DAO. Instead, the DAO gave her a positive performance evaluation, rating her as either "extraordinarily surpass[ing] expectations" or "frequently exceed[ing] expectations" for every performance metric. The performance evaluation did not mention the statements Johnson made during closing argument of the Yetman case. Nor did the performance evaluation indicate that Johnson's continued employment might be conditioned on the outcome of the Yetman appeal then pending before our sister court. Instead, the performance evaluation stated, without qualification, that Johnson had "done a great job" in her division and recommended her for promotion.

***After receiving the positive review, Johnson is fired by the new DA***

In November 2016, Devon Anderson lost her reelection bid to challenger Kim Ogg. Before taking office, Ogg reviewed the personnel files of all ADAs. In an email dated December 16, 2016, Ogg informed 37 ADAs, including Johnson, that they would not be offered a position in the new administration. The email stated:

> As you know, I have spent the past several weeks having a team of attorneys carefully review the personnel files of all assistant district attorneys employed by this organization. The objectives upon which I campaigned and which resulted in my election provided the framework for our review. Accomplishing those objectives will require a new organizational structure, new leadership, and personnel changes.
>
> I regret to inform you that, in service of those objectives, I will not be offering you a position after I take office on January 1, 2017.

4

Six days later, on December 22, 2016, our sister court issued its opinion affirming the trial court's order granting Yetman's application for pretrial habeas-corpus relief. *State v. Yetman*, 516 S.W.3d 33 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Johnson's last day of employment was December 31, 2016. As of that date, Johnson had not been told that misconduct in the Yetman trial had been the cause of her termination.

**Procedural History**

*TWC proceedings*

In January 2017, Johnson applied for unemployment benefits and was interviewed by the Hearing Officer assigned to her case. Johnson informed the Hearing Officer that she had been fired by the newly-elected DA, Kim Ogg, who had informed Johnson in an email that she would not be offered a position in the new administration without providing a "specific reason" for the decision. Johnson told the Hearing Officer that she had not received any warnings related to her firing and that, to her knowledge, nothing "specific" had happened to cause her to be fired.

The TWC provided the DAO with notice of Johnson's application. In a letter dated January 17, 2017, the DAO responded to the notice by confirming that Johnson had been fired. The DAO explained that Johnson had not been invited to serve in the new administration because of her misconduct in the Yetman trial.

The Hearing Officer then asked the DAO why there had been a delay between Johnson's misconduct and discharge. The DAO responded that the decision to terminate Johnson had been made by the newly-elected DA Kim Ogg, who had not been in a position to make any personnel decisions until after she had won the election.

On January 25, 2017, the Hearing Officer made her initial decision approving Johnson's claim for unemployment benefits.

On February 8, 2017, the DAO filed an appeal of the Hearing Officer's initial decision with the Appeal Tribunal. The DAO reiterated its position that Johnson was disqualified for benefits because she had been discharged for misconduct connected with work.

On April 13, 2017, the Appeal Tribunal issued a decision affirming the Hearing Officer's initial decision. In its decision, the Appeal Tribunal found that Johnson had been discharged at the request of the incoming DA. The Appeal Tribunal further found that while Johnson's conduct and work performance had been acceptable to the prior administration, the new administration did not wish to further employ her due to an incident that occurred in November 2015. The Appeal Tribunal then cited an internal precedent from the TWC Appeals Policy and Precedent Manual:

> Where the most recent act of misconduct on a claimant's part alleged by the employer was shown to have occurred three months prior to the

claimant's discharge, such act or omission, even if proved by a preponderance of the evidence, will not support a finding of misconduct with the work for which the claimant was discharged, because it was too remote in time from the discharge.

Applying the internal precedent to its findings, the Appeal Tribunal then concluded that Johnson was not disqualified for benefits because her misconduct was too remote in time from her discharge.

On April 27, 2017, the DAO appealed the Appeal Tribunal's decision to the Commission Appeals Board, arguing that the Tribunal erred in relying on the TWC's internal precedent and failing to consider whether the delay in discharging Johnson had been reasonable.

On June 11, 2017, the Commission Appeals Board affirmed the Appeal Tribunal's decision, adopting in full the Tribunal's findings of fact and conclusions of law.

### Trial court proceedings

On August 8, 2017, the DAO filed a petition for judicial review, requesting that the TWC's award of benefits be set aside due to Johnson's prosecutorial misconduct in the Yetman trial. *See* TEX. LAB. CODE § 212.201(a) ("A party aggrieved by a final decision of the commission may obtain judicial review of the decision by bringing an action in a court of competent jurisdiction for review of the decision against the commission.").

On June 27, 2019, the DAO filed a motion for summary judgment, arguing that the TWC only arrived at its final decision awarding benefits to Johnson by applying an erroneous legal standard that failed to consider evidence of the reasonableness of the DAO's delay in discharging her. The DAO further argued that the evidence proved as a matter of law that its delay was reasonable due to the pendency of the appeal in the Yetman case and the change over to the new DA administration and that, as a result, Johnson was disqualified for benefits.

On August 19, 2019, Johnson filed a cross-motion for summary judgment,[1] arguing that the evidence proved as a matter of law that the TWC's final decision was supported by substantial evidence. Johnson further argued that the DAO failed to meet its burden to prove the reasonableness of its delay discharging her because (1) the evidence contradicted the DAO's allegation that it delayed in discharging her due to the pendency of the appeal in the Yetman case and (2) the change over to the new administration did not constitute a legally valid reason for the delay.

Johnson supported her cross-motion with numerous exhibits, including, as relevant here: (1) the administrative record from the TWC proceedings, (2) the performance evaluation she received after the Yetman mistrial, (3) the email she received from Ogg informing her of her termination, (4) her sworn declaration, and

---

[1] The motion was actually filed by both Johnson and the TWC, who are both appellants in this appeal. For ease of reading, when discussing their motion and arguments on appeal, we will refer to them collectively as Johnson.

8

(5) and the affidavit of Belinda Hill, who served as the DAO's First ADA during Johnson's term of employment.

In her declaration, Johnson stated that:

- when the trial court in the Yetman case found that she had engaged in prosecutorial misconduct, she was not told by her supervisors that her employment was in jeopardy or that she was under any type of investigation for the misconduct;

- she was never told or warned that her continued employment would be based on the resolution of the Yetman appeal;

- when she received Ogg's email informing her that she would not be offered a position in the new administration, she was not told that the termination of her employment was based on the appellate court's opinion affirming the trial court's order;

- at the time, she was not under investigation for misconduct;

- she was never given a reason why she was not being invited back to continue her employment with the DAO or admonished for any misconduct; and

- only after she applied for unemployment benefits in January 2017 was she informed that her employment had been terminated due to misconduct.

In her affidavit, Hill stated that during her tenure as First ADA:

- she personally handled or reviewed all employee investigations, discipline recommendations, implementation of discipline, and terminations;

- at no time was Johnson investigated, disciplined, or considered for termination for misconduct related to the Yetman trial;

- neither she nor DA Devon Anderson postponed initiation of a disciplinary investigation or implementation of disciplinary action pending the resolution of the DAO's appeal of the trial court's order finding that Johnson had engaged in misconduct; and

9

- Johnson's continued employment did not depend on the resolution of the Yetman appeal.

On September 10, 2019, the trial court signed an order granting the DAO's motion for summary judgment and denying Johnson's cross-motion for summary judgment. In its order, the trial court found that: (1) no substantial evidence exists to support the TWC's award of unemployment benefits, (2) the TWC made its decision without regard to the law or the facts because it failed to consider evidence of the reasonableness of the delay between Johnson's misconduct and discharge, and (3) substantial evidence exists that the delay was reasonable due to the pending appeal and the change over to the new DA. The trial court therefore ordered that the TWC's award of benefits be reversed.

Johnson appeals.

## Challenge to TWC Ruling

On appeal, Johnson argues that the trial court erred in granting the DAO's motion for summary judgment and denying her cross-motion because the evidence presented to the trial court establishes as a matter of law that the final decision of the Commission Appeals Board is supported by substantial evidence.

## A.   Standard of review

### 1.   Summary judgment

We review an order granting or denying a motion for summary judgment de novo. *Charles R. Tips Family Tr. v. PB Commercial LLC*, 459 S.W.3d 147, 152 (Tex. App.—Houston [1st Dist.] 2015, no pet.). When, as here, both parties moved for summary judgment and the trial court granted one and denied the other, we review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Id.* We may affirm the judgment that the trial court rendered or reverse and render the judgment that the trial court should have rendered. *Id.*

### 2.   Substantial evidence review

The applicable standard of review for a TWC decision is "trial de novo based on the substantial evidence rule." LAB. § 212.202(a). A TWC decision carries a presumption of validity, and the party seeking to set it aside has the burden to show it was not supported by substantial evidence. *Kaup v. Tex. Workforce Comm'n*, 456 S.W.3d 289, 294 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Whether the TWC's decision is supported by substantial evidence is a question of law. *Id.*

Under the substantial evidence rule, the burden is on the party seeking to set aside the TWC's ruling to demonstrate that less than substantial evidence supports the decision. *Id.* We do not weigh the evidence to decide whether TWC made the

11

correct decision but, instead, ask whether the evidence introduced before the trial court shows facts in existence at the time of the TWC's decision that reasonably support the decision it reached. *Id.*

If the evidence is such that reasonable minds could have reached the same conclusion as the TWC, the agency's decision must be upheld. *Id.* In other words, if substantial evidence would support either affirmative or negative findings, we must uphold the agency decision and resolve any conflicts in favor of the agency decision. *Id.* We may not set aside an agency decision merely because testimony was conflicting or disputed or because it did not compel the agency's decision. *Id.* If there is substantial evidence which supports the order, the courts must defer to the administrative body's exercise of discretion. *Id.* It is the agency's function to resolve conflicts in evidence, and it is the aim of the substantial evidence rule to protect that function. *Id.* at 294–95.

We review the trial court's judgment by comparing the TWC decision with the evidence presented to the trial court and the governing law. *Id.* at 295. In reviewing the order granting summary judgment, we decide whether the evidence presented to the trial court established as a matter of law that substantial evidence existed to support the TWC decision. *Id.*

"Substantial evidence" is more than a scintilla, but less than a preponderance. *Id.* If substantial evidence exists that supports the TWC's determination, it does not

affect our resolution of the case that the DAO presented contrary evidence; we do not weigh the evidence. *Id.*

In addition to reviewing whether substantial evidence supports the TWC ruling, we also review whether TWC applied the correct legal standard to reach its conclusion. *Id.* If the TWC grants benefits without regard to the law or the facts, the denial is unreasonable, arbitrary, or capricious and subject to reversal. *See id.*

**B.     Applicable law**

Under the Labor Code, "[a]n individual is disqualified for benefits if the individual was discharged for misconduct connected with the individual's last work." LAB. § 207.044(a). However, "an employee's act or omission cannot be too remote in time from the discharge to constitute misconduct that is 'connected with' the employee's last work." *City of Houston v. Morris*, 23 S.W.3d 505, 509 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Thus, "if the discharge is remote in time from the misconduct, then the burden is on the employer to show the delay was reasonable." *Id.*

**C.     Analysis**

It is undisputed that the DAO discharged Johnson for misconduct; it is undisputed that Johnson's misconduct occurred 13 months before her date of discharge; and it is undisputed that such a delay renders misconduct too remote in time from discharge to be considered connected with an employee's last work absent

13

a showing of reasonableness by the employer. Thus, in challenging the TWC's decision, the DAO had the burden to present evidence establishing as a matter of law the reasonableness of its delay in discharging Johnson. *See Kaup*, 456 S.W.3d at 294 (party seeking to set aside presumptively valid TWC decision has burden to show decision was not supported by substantial evidence); *Morris*, 23 S.W.3d at 509 (if discharge is remote in time from misconduct, burden is on employer to show delay was reasonable). The DAO contends that it met its burden by presenting evidence that the decision to discharge Johnson was made by the new DA, Kim Ogg; Ogg was not able to make the decision until after her election in November 2016; and even after her election, Ogg did not immediately decide whether to discharge Johnson but instead waited until the resolution of the appeal in the Yetman case. We disagree.

First, while the DAO *contends* that Ogg refrained from making her decision until after the resolution of the Yetman appeal, the DAO has failed to present *evidence* supporting its contention. The evidence presented to the trial court does not show that Ogg waited to make her decision until the Yetman appeal was resolved. In fact, it shows the opposite. Ogg sent her termination email on December 16, 2016. But the court of appeals did not issue its opinion in the Yetman appeal until six days later on December 22, 2016. *Yetman*, 516 S.W.3d at 33. Thus, Ogg's decision to terminate Johnson could not have depended on the resolution of the Yetman appeal, since Ogg made the decision before the appeal was resolved.

14

Second, while it is undisputed that Ogg could not have made the decision to discharge Johnson until after she was elected as DA in November 2016, the DAO has failed to present evidence showing that it could not have discharged Johnson before then—i.e., before Ogg was elected.

For example, the DAO did not present evidence that Johnson's misconduct was not discovered until after Ogg's election; it is undisputed that the DAO knew of the misconduct from the day it was committed. *See Kaup*, 456 S.W.3d at 297–98 (rejecting remoteness argument when summary-judgment evidence revealed that employer fired employee one week after discovering that employee had been violating company policy for months); *Fuller v. Tex. Workforce Comm'n*, No. 02-17-00169-CV, 2018 WL 2142902, at *3–5 (Tex. App.—Fort Worth May 10, 2018, no pet.) (mem. op.) (rejecting remoteness argument when evidence showed that employer fired employee two days after discovering that employee had violated company policy).

Nor did the DAO present evidence that it could not have discharged Johnson until after Ogg took office because it had been following established procedures designed to prevent the wrongful termination of employees. *See Morris*, 23 S.W.3d at 509 ("As a general rule, misconduct will not be found where the precipitation incident is too remote in time from the date of the work separation. This general rule does not apply, however, if the delay is caused by established procedures designed

15

to protect the worker from possible erroneous separation decisions." (quoting TWC Appeal No. 97-008947-10-082097)).

Nor has the DAO cited authority that a change in an employer's leadership, standing alone, justifies an otherwise unreasonable delay in discharging an employee for work-related misconduct. In the absence of such authority, we reject the DAO's argument and the trial court's finding that the delay in discharging Johnson was reasonable due to the change over to the new administration.

Presuming the validity of the TWC's decision, we hold that the DAO failed to meet its burden to present evidence to the trial court establishing as a matter of law the reasonableness of the DAO's delay in discharging Johnson. *See Kaup*, 456 S.W.3d at 294; *Morris*, 23 S.W.3d at 509. The DAO argues that we should nevertheless affirm the trial court's summary judgment setting aside the TWC's decision because the TWC made its decision without regard to the law or the facts. *See Kaup*, 456 S.W.3d at 295 (trial court may set aside TWC decision made without regard to law or facts). Specifically, the DAO contends that, in making its decision, the TWC disregarded the law and the facts by (1) failing to consider evidence of the reasonableness of the DAO's 13-month delay in discharging Johnson and instead (2) applying an erroneous TWC internal precedent establishing a three-month delay as unreasonable per se. Again, we disagree.

16

First, the record does not support the DAO's contention that the TWC failed to consider evidence of the reasonableness of the DAO's delay in discharging Johnson. The DAO contends the TWC failed to consider two types of evidence: (1) evidence that the delay was due to the change in the DAO's leadership and (2) evidence that the delay was due to the pendency of the Yetman appeal.

But the record shows that the TWC *did* consider the first type of evidence. In its decision affirming the Hearing Officer's initial decision, the Appeal Tribunal found that Johnson had been discharged "at the request of the incoming DA." The Appeal Tribunal further found that while Johnson's "conduct and work performance" had been "acceptable to the prior administration[,]" "[t]he new administration did not wish to further employ [her] based on an incident" that had "occurred in November 2015." The Appeal Tribunal's findings were adopted in full by the Commission Appeals Board in its final decision affirming the award of benefits. These findings show that the TWC considered—and rejected—evidence that the delay in discharging Johnson was reasonable due to the change in the leadership of the DAO.

The record further shows that the DAO never presented the TWC with the second type of evidence. *See Morris*, 23 S.W.3d at 509 ("[I]f the discharge is remote in time from the misconduct, then the burden is on the *employer* to show the delay was reasonable." (emphasis added)). The record shows that, in the TWC

proceedings, the DAO stated that it had discharged Johnson for her misconduct in the Yetman trial. But there is no evidence in the record that the DAO ever informed the TWC that it had appealed the trial court's order finding that Johnson had committed prosecutorial misconduct. Nor is there any evidence that the DAO informed the TWC that Ogg waited to make her decision until the appeal was resolved. The TWC cannot be faulted for failing to consider the pendency of the Yetman appeal as evidence of the reasonableness of the DAO's delay in discharging Johnson when the DAO did not bother to present the TWC with such evidence for its consideration. *See id.*

Second, assuming without deciding the TWC made its decision by applying an erroneous internal precedent, the error is not a sufficient ground for setting aside the TWC's decision. In making its decision, the TWC applied the following internal precedent from its Appeals Policy and Precedent Manual:

> Where the most recent act of misconduct on a claimant's part alleged by the employer was shown to have occurred three months prior to the claimant's discharge, such act or omission, even if proved by a preponderance of the evidence, will not support a finding of misconduct with the work for which the claimant was discharged, because it was too remote in time from the discharge.

The DAO construes this internal precedent as establishing a per se rule: misconduct occurring more than three months before discharge is too remote in time from the discharge to be considered connected with the employee's last work *regardless* of the reasons for the delay. The DAO contends that this rule violates

18

*Morris*, which holds that such misconduct is too remote in time from the discharge *unless* the employer shows the delay was reasonable. *See* 23 S.W.3d at 509–10.

But whether the TWC's internal precedent violates *Morris* is irrelevant to whether the TWC's decision in this case should be affirmed. The TWC's ultimate conclusion (that Johnson is not disqualified for benefits because her discharge was too remote in time from her misconduct) is supported by substantial evidence (as detailed in the first part of our analysis). Because the TWC's conclusion is supported by substantial evidence, "it is immaterial that it may have proceeded to the conclusion on an erroneous theory or may have given an unsound reason for reaching it." *Tex. Emp't Comm'n v. Hays*, 360 S.W.2d 525, 527 (Tex. 1962). This is part of the reason why it is so difficult to reverse a TWC decision. But this difficulty is by design, given the deference afforded to administrative decisions.

Finally, the DAO suggests that *Morris*'s remoteness standard conflicts with the plain meaning of Section 207.044(a), which simply requires that the employee's misconduct be "connected with the [employee]'s last work" regardless of the time between the misconduct and discharge. LAB. § 207.044(a). To the extent the DAO urges us to overrule *Morris*, we decline to do so; the precedent is soundly reasoned and well-established. And even if *Morris* were incorrect, we would still be bound to follow it "because there has been no intervening material change in the law since the

opinion was issued." *Nghiem v. Sajib*, 559 S.W.3d 188, 192 (Tex. App.—Houston [1st Dist.] 2017), *rev'd*, 567 S.W.3d 718 (Tex. 2019).

In sum, Johnson presented substantial evidence that her discharge was remote in time from her misconduct, and the DAO failed to present evidence conclusively negating Johnson's evidence or proving that its delay in discharging her was reasonable. We hold that the evidence presented to the trial court established as a matter of law that substantial evidence existed to support the TWC's decision awarding benefits to Johnson. We therefore further hold that the trial court erred in granting the DAO's motion for summary judgment and in denying Johnson's cross-motion for summary judgment. Accordingly, we sustain Johnson's sole issue.

## Conclusion

We reverse the trial court's order granting the DAO's motion for summary judgment and denying Johnson's cross-motion for summary judgment and render judgment for Johnson affirming the TWC's award of benefits.

Gordon Goodman
Justice

Panel consists of Justices Kelly, Goodman, and Countiss.

20