**Opinion issued December 23, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00084-CV

———————————

## DAVID E. KAUP, Appellant

## V.

## TEXAS WORKFORCE COMMISSION, GLOBAL SECURITY CONSULTING, & GLOBAL SECURITY ASSOCIATES, Appellees

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-12368**

---

# O P I N I O N

David Kaup was denied unemployment benefits by the Texas Workforce Commission upon the TWC's finding that he was fired by his employer, Global Securities, for misconduct. After unsuccessfully appealing that decision to the TWC Appeal Tribunal, Kaup appealed to the district court. TWC filed a motion for

summary judgment, which the trial court granted. The trial court entered a final judgment, holding that there was substantial evidence to support the TWC decision and affirming that judgment.[1] Kaup contends that the trial court erred by granting TWC's summary-judgment motion. We affirm.

## Background

David Kaup has a degree in criminal justice administration and many years of experience in law enforcement and private security. He holds multiple security-related certifications and licenses, including a Qualified Manager's License from the Texas Private Security Bureau.

Global Security hired Kaup in July 2010 as a security compliance officer to hold the company's Qualified Manager license, train employees, conduct fingerprinting, and handle its employees' state licensing applications and renewals. The Global Securities job application asked Kaup to list all "periods of unemployment," to which Kaup responded: "5/6/10 – NOW."

---

[1] Although Kaup's employer, Global Security, did not move for summary judgment or join the TWC's summary-judgment motion, the sole allegation in Kaup's suit was that the TWC's decision was erroneous. As such, the district court's summary judgment affirming the TWC's decision disposed of the sole claim that Kaup was attempting to assert against either the TWC or his employer. Because Kaup had no separate complaint against Global Security, the summary judgment, which states that the "order is final and appealable and disposes of all parties and all claims," was a final, appealable order. *Spicer v. Tex. Workforce Comm'n*, 430 S.W.3d 526, 532 n.3 (Tex. App.—Dallas 2014, no pet.); *Smith v. Tex. Workforce Comm'n*, No. 12-11-00230-CV, 2012 WL 2026712, at *1 (Tex. App.—Tyler June 6, 2012, no pet.) (mem. op.); *Chawla v. Tex. Workforce Comm'n*, No. 03-10-00327-CV, 2012 WL 3629460, at *1 (Tex. App.—Austin Aug. 22, 2012, pet. denied) (mem. op).

One year into his employment at Global Securities, the company approached Kaup about reducing his position to part-time status; Kaup did not agree to reduce his hours and continued working full-time.

The following year, in March 2012, Kaup signed an "Employee Handbook Acknowledgement Form," affirming this statement: "I have received the handbook, and I understand that it is my responsibility to read and comply with the policies contained in this handbook and any revisions made to it." The Handbook contained the following provision:

Conflicts of Interest/Other Employment

GS believes in conducting all company operations in an ethical manner and in compliance with federal laws and the laws of the states in which it does business. A conflict of interest may arise in any situation in which an employee's loyalties are divided between business interests that, to some degree, are incompatible with the interests of GS. If an employee decides to seek additional employment, the employee must let their manager know to ensure that there is no conflict of interest. All such conflicts should be avoided. GS expects absolute integrity from all employees and will not tolerate any conduct that falls short of that standard. GS expects that no employee will knowingly place himself or herself in a position that would have the appearance of being, or could be construed to be, in conflict with the interests of the company.

GS recognizes and respects its employees' rights to participate in outside activities. However, certain activities are prohibited because they are considered a conflict of interest. Situations involving possible conflicts of interest will be evaluated on a case-by-case basis consistent with company policy. For questions about a potential conflict of interest, bring it to the attention of a manager or Human Resources. Where undisclosed and unapproved conflicts of interest occur, corrective action may result, including termination of employment.

Kaup continued to work full-time at Global Securities after signing this acknowledgement.

On September 2, 2012, Global Securities placed an anonymous job listing on the ziprecruiter.com website soliciting resumes for a security manager position in Houston, Texas. The listing did not specify if the position was full-time or part-time. There was no indication that Global Securities was the company behind the listing. According to Global Securities Director of Human Resources & Administration, Audrey Villani, Global Securities posted the position to find a replacement for Kaup "in case [he] decided to leave the company . . . if [his position] were to become part time."

At 9:00 in the morning on September 11, Global Securities received an application for the position from Kaup's personal email account. The email was received during Kaup's regular work hours at Global Securities. According to Kaup's attached resume, he had an on-going business relationship with three separate security companies at that time. In addition to his employment with Global Securities from July 2010 forward, Kaup disclosed that he had been a consultant to Shelter Security since May 2009 and to GT Security Solutions since March 2012.

Global Securities responded by terminating Kaup's employment one week later. His termination letter explains that, "[i]n addition to applying for

4

employment with other companies during work hours, you have obtained a secondary employment without approval. Our employee handbook states that secondary employment must be previously approved." After noting that Kaup never requested approval for the two consulting positions, the letter explains that Kaup's "employment with the company is terminated immediately for violating company policies, as stated above."

Kaup sought unemployment benefits from TWC but was denied as a result of "violation of company rules and policies" which "is considered misconduct connected with the work." Kaup appealed the decision to the TWC Appeal Tribunal and was again denied. Kaup filed a petition with the district court seeking judicial review of the denial of unemployment benefits. Both Kaup and the TWC filed motions for summary judgment. The trial court granted TWC's motion and entered a final judgment declaring that "there is substantial evidence to support the Texas Workforce Commission decision" and affirming the denial of unemployment benefits. Kaup timely appeals that judgment.

## Challenge to TWC Ruling

Kaup argues that the TWC erred by denying his benefits and the district court erred by granting summary judgment to TWC because Global Securities's restrictive policies are not enforceable and Kaup has a defense to the assertion of employee misconduct.

**A.     Standard of review**

**1.     Summary judgment**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

**2.     Substantial evidence**

The applicable standard of review for a TWC decision is "trial de novo based on the substantial evidence rule." TEX. LAB. CODE ANN. § 212.202(a) (West 2006); *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986); *Tex. Workforce Comm'n v. City of Houston*, 274 S.W.3d 263, 266 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A TWC decision carries a presumption of validity, and the party seeking to set it aside has the burden to show it was not supported by substantial evidence. *City of Houston*, 274 S.W.3d at 266 (citing *Mercer*, 701 S.W.2d at 831). Whether TWC's decision is supported by substantial evidence is a question of law. *Id.*;

6

*Blanchard v. Brazos Forest Prods., L.P.*, 353 S.W.3d 569, 572 (Tex. App.—Fort Worth 2011, pet. denied).

Kaup argues that the substantial evidence standard places this appellate court "in the position of being a trier of fact" and requires us to reverse the trial court's judgment if the TWC fails to convince us that "a 'reasonable person' would not have reached a different conclusion" than the TWC did, based on evidence presented to it. This misstates the standard of review for TWC determinations.

Under the substantial evidence rule, the burden is on Kaup—as the party who seeks to set aside the TWC's ruling—to demonstrate that less than substantial evidence supports the decision. *See City of Houston*, 274 S.W.3d at 266. We do not weigh the evidence to decide whether TWC made the correct decision but, instead, ask "whether the evidence introduced before the trial court shows facts in existence at the time of the [TWC's] decision that reasonably support the decision" it reached. *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998); *Blanchard*, 353 S.W.3d at 572. If the evidence is such that reasonable minds could have reached the same conclusion as the TWC, the agency's decision must be upheld. *City of Houston*, 274 S.W.3d at 267; *Blanchard*, 353 S.W.3d at 572. In other words, "[i]f substantial evidence would support either affirmative or negative findings, we must uphold the agency decision and resolve any conflicts in favor of the agency decision." *Farris v. Fort Bend Indep. Sch. Dist.*, 27 S.W.3d

7

307, 312 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing *Auto Convoy v. R.R. Comm'n*, 507 S.W.2d 718, 722 (Tex. 1974)). "We may not set aside an agency decision merely because testimony was conflicting or disputed or because it did not compel the agency's decision." *Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 441 (Tex. App.—Austin 2011, pet. denied) (citing *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984)). "If there is substantial evidence which supports the order, the courts are bound to follow the discretion of the administrative body." *Brinkmeyer*, 662 S.W.2d at 956. It is the agency's function to resolve conflicts in evidence, and "it is the aim of the substantial evidence rule to protect that function." *Id.*

"We review the trial court's judgment by comparing the TWC decision with the evidence presented to the trial court and the governing law." *Blanchard*, 353 S.W.3d at 573. In reviewing the order granting summary judgment, we decide whether the evidence presented to the trial court established as a matter of law that substantial evidence existed to support the TWC decision. *Id.*; *Lopez v. Tex. Workforce Comm'n*, No. 01-10-00849-CV, 2012 WL 4465197, at *4 (Tex. App.—Houston [1st Dist.] Sept. 27, 2012, no pet.) (mem. op.). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Blanchard*, 353 S.W.3d at 572 (citing *City of Houston v. Tippy*, 991 S.W.2d 330, 334 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). If substantial evidence exists that supports the TWC's

8

determination, it does not affect our resolution of the case that Kaup presented contrary evidence; we do not weigh the evidence. *Farris*, 27 S.W.3d at 312.

In addition to reviewing whether substantial evidence supports the TWC ruling, we also review whether TWC applied the correct legal standard to reach its conclusion. *City of Houston v. Morris*, 23 S.W.3d 505, 508 (Tex. App.—Houston [1st Dist.] 2000, no pet.). If the TWC denies benefits "without regard to the law or the facts," the denial is "unreasonable, arbitrary, or capricious" and subject to reversal. *Id.*

## B.     Misconduct as basis for denial of unemployment benefits

A person is ineligible to receive unemployment compensation benefits "if the individual was discharged for misconduct connected with the individual's last work." TEX. LAB. CODE ANN. § 207.044(a) (West 2006). Misconduct is a defined term:

> (a) "Misconduct" means mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or *violation of a policy or rule adopted to ensure the orderly work and the safety of employees*.
>
> (b) The term "misconduct" does not include an act in response to an unconscionable act of an employer or superior.

*Id.* § 201.012 (emphasis added).

An employer is not required to prove intent with respect to misconduct arising from the violation of a company policy or rule. *See Mercer*, 701 S.W.2d at

9

831; *Jimison v. Tex. Workforce Comm'n*, No. 2-09-127-CV, 2010 WL 851418, at *3 (Tex. App.—Fort Worth Mar. 11, 2010, no pet.) (mem. op.); *Lairson v. Tex. Emp't Comm'n*, 742 S.W.2d 99, 101 (Tex. App.—Fort Worth 1987, no writ). Likewise, "[t]here is no requirement that the employer show the violation negatively affected the employee's work." *Murray v. Tex. Workforce Comm'n*, 337 S.W.3d 522, 525 (Tex. App.—Dallas 2011, no pet.) (citing TEX. LAB. CODE ANN. § 201.012). "The statutory definition of 'misconduct' requires only that the employee violate a rule or policy adopted to ensure orderly work or safety." *Id.* (concluding that violation of policy that allowed only five incidents of tardiness qualified as misconduct).

## C.     Whether violating Global Securities's policy may qualify as misconduct

Kaup makes three arguments why his failure to disclose outside employment is not misconduct. First, he argues that the Labor Code requires employees to adhere only to "reasonable" company policies and Global Securities's policy was not reasonable. Second, Kaup argues that a policy limiting an employee from accepting secondary employment in his off-duty time does not qualify as a "rule adopted to ensure the orderly work and the safety of employees," and therefore does not meet the statutory requirements of misconduct. Third, Kaup asserts that Global Securities had to have been aware of his outside employment for months

10

before firing him and, therefore, any failure to disclose was too remote to be considered the misconduct leading to his termination.[2]

## 1.    Unreasonableness claim

Failure to comply with an unreasonable company policy is not misconduct. *See Edwards v. Tex. Emp't Comm'n*, 936 S.W.2d 462, 468 (Tex. App.—Fort Worth 1996, no writ) (citing *Lairson*, 742 S.W.2d at 101); *Lohmuller v. Tex. Workforce Comm'n*, No. 14-00-00008-CV, 2000 WL 1862824, at *3 (Tex. App.— Houston [14th Dist.] Dec. 21, 2000, no pet.) (mem. op, not designated for publication) (holding that employer's policy, which required employee to work without pay in violation of federal law, was unreasonable and employee's refusal to comply was not misconduct). Kaup, as the party seeking to set aside the agency decision, has the burden of proving that the policy is unreasonable. *See Edwards*, 936 S.W.2d at 468; *Lairson*, 742 S.W.2d at 101.

Kaup argues that Global Securities had no right to control his leisure activities and that the policy prohibiting him from obtaining unapproved side employment, outside of his regular work hours, is an unconscionable attempt to

---

[2]    Kaup makes a fourth argument that a non-compete agreement he signed with Global Securities is unenforceable as a matter of law. Because we conclude that substantial evidence exists to support the TWC's conclusion that Kaup failed to disclose his outside employment in violation of the Handbook policy and that failure meets the definition of employee misconduct, we do not reach the questions whether Kaup also violated the non-complete agreement or whether that agreement was enforceable against him.

control his off-duty time. He contends that this infringement on his personal time is unreasonable.

Employers are permitted to limit their employees' outside employment to avoid conflicts of interest. *See Evans v. Reliant Energy, Inc.*, No. 01-01-00855-CV, 2002 WL 31838088, at *3–4 (Tex. App.—Houston [1st Dist.] Dec. 19, 2002, no pet.) (mem. op., not designated for publication) (holding that employer could enforce its business ethics policy that prohibited employees from working for company's customers because multiple employments could create conflict of interest for employees). Further, the Global Securities policy does not wholly prohibit outside employment but merely requires employees to disclose and obtain approval of the outside employment in light of the company policy aimed at avoiding conflicts of interest in security-sensitive positions. The TWC concluded that this policy was enacted "to protect the employer's assets and business opportunities" and that it was reasonable. We conclude that Kaup has not met his burden to establish that the policy was unreasonable.

### 2. Policy adopted to ensure orderly work

Not every violation of company policy will trigger denial of unemployment benefits. *Tippy*, 991 S.W.2d at 336. Only those policies that are adopted to ensure orderly work or the safety of employees qualify. *See id.* (analyzing definition of misconduct found in TEX. LAB. CODE ANN. § 201.012(a)).

Kaup disputes that a policy enacted by a security company that prohibits security personnel from working for other security companies without disclosure and approval of that outside employment qualifies as a policy "enacted to ensure orderly work."

None of the parties have cited a case addressing whether a policy limiting outside employment qualifies as a policy adopted to ensure orderly work; we have not located such a case either. Nonetheless, we note that Global Securities's use of such a policy is not unique,[3] that conflicts of interest with divided loyalties are legitimate concerns for employers, and, most importantly, that this particular policy did not prohibit all outside employment but, instead, required only that they be disclosed to enable the employer an opportunity to evaluate whether a true or

---

[3]    *See* Vincent DiLorenzo & Clifford R. Ennico, *Basic Legal Transactions* § 24:6 (2011) (stating that typical employee handbook will require employees to avoid conflicts including outside employment); *see, e.g.*, Robert J. Nobile, *Guide to Employee Handbooks* § 10:12 (2014) (providing model policy statement on moonlighting: "Although XYZ expects you to devote your primary efforts towards your duties and responsibilities with us, you may engage in outside employment with the prior approval of your immediate supervisor and the human resources department."); *Guide to HR Policies and Procedures Manuals* § 7:17 (2014) (suggesting as model corporate policy/procedure statement: "XYZ has established business conduct guidelines to ensure that all Company employees conform to the ethical and legal standards XYZ demands in order to preserve its integrity and reputation. These guidelines emphasize the Company's goal of striving to attain the highest ethical standards when resolving potential or actual conflicts of interest. . . . No employee may serve as an employee, director, or officer of any supplier or customer without the prior written approval of the vice president of Human Resources or the general counsel.").

perceived conflict of interest might exist. With those considerations in mind, we conclude that a policy requiring disclosure of outside employment in an effort to avoid conflicts of interest and divided loyalties of security personnel qualifies as a policy adopted to ensure orderly work.

### 3. Remoteness claim

Violations of company policies that are remote from the termination of employment will not qualify as misconduct for unemployment compensation purposes. *Morris*, 23 S.W.3d at 509–10.

Kaup asserts that Global Securities's licensing verification process would have ensured that Global Securities was aware of his outside employment at least six months before it fired him and, therefore, his subsequent firing was too remote to be linked to this allegation of misconduct. But Global Securities offered evidence that it did not know about the outside employment as Kaup contends.

Villani's affidavit, which was attached to the TWC's motion for summary judgment, states that Global Securities "only became aware of [Kaup's] secondary employment when he submitted a resume to the company in response to a job posting and listed this secondary employment on his resume." According to Villani, Global Securities knew about Kaup's outside employment for only one week before firing him. Kaup responds that Villani "committed perjury" in that the evidence presented to the TWC established that Villani checked Kaup's licensing

earlier and, according to Kaup, the information that search would have elicited includes other "qualified manager" licenses.

The decision of the TWC Appeal specifically addresses this matter: "The claimant violated the employer's reasonable policies when he engaged in outside work . . . The claimant suggests that his employer knew or should have known of this outside employment. The appeal Tribunal does not find this argument persuasive."

We do not weigh the evidence or decide issues of credibility when reviewing a decision by the TWC to deny unemployment benefits. *Farris*, 27 S.W.3d at 312; *Scally*, 351 S.W.3d at 441. By its ruling, the TWC rejected Kaup's remoteness argument. We do not decide whether the TWC reached the correct decision but, instead, whether substantial evidence was presented to the trial court to support the ruling. Under that standard and in light of Villani's affidavit, we overrule Kaup's contention that his misconduct was too remote to form the basis for denying unemployment benefits.

Having rejected all three of Kaup's arguments that Global Securities's policy is unenforceable against him, we address next whether there was substantial evidence presented to the trial court that Kaup did engage in employee misconduct.

**D.    Substantial evidence of misconduct**

In support of its summary-judgment motion, the TWC presented evidence of Kaup's initial application for employment, on which he stated that he was unemployed as of July 2010, and Kaup's second application for employment seeking his current position at Global Securities, on which he disclosed that he had worked as a consultant to Shelter Security since 2009 and for GT Security Solutions since March 2012. TWC also included as evidence the signature page of Kaup's handbook acknowledgement form, dated March 2012, by which he agreed to disclose potential conflicts of interest, including outside employment. TWC also included as evidence Kaup's termination letter written by Global Securities's HR Director, as well as her affidavit stating that Kaup was terminated for "working on non-business related material while on the job and having secondary employment without telling the company and without seeking prior authorization under the rules." TWC argued that the evidence established, as a matter of law, that there was substantial evidence in support of the TWC's finding that Kaup was disqualified for unemployment benefits because he committed misconduct as defined by the Texas Labor Code.

The evidence submitted by the TWC to support its conclusion that Kaup violated a known company policy by failing to disclose his outside employment was substantial. By signing the handbook signature page, Kaup acknowledged that

it was his "responsibility to read and comply with the policies contained" within it, including that he disclose efforts to obtain additional employment and conflicts of interest, including outside employment. Although Kaup's second job application stated that he was working as a consultant to Shelter Securities when he initially accepted employment at Global Securities, his initial employment application does not disclose that position. Further, Kaup began working as a consultant to GT Security Solutions after he signed the handbook acknowledgement form, but there is no evidence that he told Global Securities about his GT Security employment before he listed it on his second employment application.

Kaup argues that the justification Global Securities gave for firing him was a pretext; he contends he actually was fired to allow his position to be reduced to part-time to save the company money. The TWC concluded that he was, instead, terminated for violating company policy.

Under the substantial evidence rule, we ask "whether the evidence introduced before the trial court shows facts in existence at the time of the [TWC's] decision that reasonably support the decision" it reached. *Collingsworth Gen. Hosp.*, 988 S.W.2d at 708; *Blanchard*, 353 S.W.3d at 572. "If there is substantial evidence which supports the order, the courts are bound to follow the discretion of the administrative body." *Brinkmeyer*, 662 S.W.2d at 956.

The TWC denied Kaup's application for unemployment benefits. Implicit in that decision is the rejection of Kaup's argument at the TWC hearing that Global Securities fired him for a reason other than his failure to disclose outside employment. Our review does not include an evaluation whether the TWC reached the correct decision whether to deny benefits. *Collingsworth Gen. Hosp.*, 988 S.W.2d at 708; *Blanchard*, 353 S.W.3d at 572. Having found that substantial evidence exists to support the TWC's decision, we reject Kaup's pretext argument.

Kaup next argues that his signature on the company handbook acknowledgement form did not represent an agreement to abide by the policies stated in the handbook but merely an acknowledgement that he received a copy of the handbook. The acknowledgement form signed by Kaup states, "I have received the handbook, and I understand that it is my responsibility to read *and comply with* the policies contained in this handbook and any revisions made to it." Accordingly, by its terms, Kaup agreed to abide by the policies contained in the handbook, and violations of those terms can meet the definition of employee misconduct found in the Labor Code. *See* TEX. LAB. CODE ANN. § 201.012 (including in "misconduct" definition "violation of a policy or rule adopted to ensure the orderly work and the safety of employees").

Kaup counters that he did not actively hide these side jobs and that Global Securities would have seen them when it regularly reviewed his state licensing

18

documents. Intent is not a required element to establish employee misconduct. *See Mercer*, 701 S.W.2d at 831 (stating that employer is not required to prove intent with respect to misconduct arising from violation of company policy or rule); *Jimison*, 2010 WL 851418, at *3; *Lairson*, 742 S.W.2d at 101. The question is not whether Kaup intended to hide the outside employment but, rather, whether he violated company policy requiring him to disclose it. There is substantial evidence that he did. Accordingly, we overrule each of Kaup's arguments seeking to challenge the TWC ruling.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Justices Massengale, Brown, and Huddle.