

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00087-CV

TEXAS DEPARTMENT OF CRIMINAL JUSTICE AND THE
TEXAS WORKFORCE COMMISSION, Appellants

V.

BENJAMIN LEFOUMBA, Appellee

On Appeal from the County Court at Law No. 3
Fort Bend County, Texas
Trial Court No. 19-CCV-066338

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Benjamin LeFoumba was denied unemployment compensation benefits by the Texas Workforce Commission because the Commission found that he was fired by his employer, the Texas Department of Criminal Justice, for misconduct connected with his employment. LeFoumba appealed the Commission's decision to the County Court at Law No. 3 of Fort Bend County.[1] The trial court concluded that the Commission's decision was not supported by substantial evidence and reversed the decision. Because we conclude that the Commission's decision was supported by substantial evidence, we reverse the trial court's judgment and render judgment affirming the Commission's decision that LeFoumba is not entitled to benefits.

*Background*

The Department's executive directive regarding dress and grooming standards (PD-28) prohibits any male on the uniformed correctional staff from wearing beards. The standards provide a single exception when

> [a] male uniformed employee has a medically diagnosed skin disorder and a physician has prescribed the growth of minimal facial hair. In such case, the length of the facial hair shall not exceed one-quarter of an inch. If the skin disorder is permanent (e.g., pseudo folliculitis), only one physician's statement dated within six months of the request shall be required for the duration of employment. However, if the disorder is temporary, a physician's statement shall be required every 90 calendar days for the duration of the disorder.[2]

---

[1] Originally appealed to the Fourteenth Court of Appeals in Houston, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Fourteenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2] The Department's executive directive on general rules of conduct and disciplinary action guidelines states that the violation of statutory authority, court order, rules, regulations, or policies is a level 2 violation, and provides,

LeFoumba had been employed by the Department as a correctional officer for more than fifteen years when, in 2019, his employment was terminated for wearing a goatee. When advised by his employer that the goatee did not comply with PD-28, LeFoumba provided the Department with a letter from his physician, Wilber A. Estrada, M.D., stating that LeFoumba had "a chronic, life-long condition of ingrowing hair on his face and neck, that is worsened by shaving" and asking that he be permitted to "grow [a] beard as necessary."[3] LeFoumba explained that, because of his condition—for which he had seen multiple doctors—shaving was excruciatingly painful. LeFoumba testified that he shaved his cheeks, face, and neck on the day of the hearing, at which he was wearing a goatee. He further testified that, according to his doctors, his medical condition required that he wear a goatee at all times and that the Department did not warn him that his facial hair was not in compliance with PD-28.

The Department's documentation reflects, however, that, on February 12, 2019, LeFoumba was "counseled on the fact that [his] beard was in violation of PD-28 Dress and

---

> It is the employee's responsibility to know, have a clear understanding of, and comply with rules, regulations, policies, court orders, and statutory authority governing the operation of the [Department]. Not being aware of the existence of any of the aforementioned is not a defense to finding a violation.
>
> The specific rule, regulation, policy, or statutory authority shall be clearly identified when charging an employee with this violation.

The range of disciplinary action for a level 2 violation ranges from probation to dismissal for the first two violations. A third such violation requires dismissal.

[3]In 2017, LeFoumba had presented the Department with a letter from his then physician, R. Parkerson, M.D., which stated that LeFoumba "has a chronic problem with in-grown hairs of his neck that [was] worsened by shaving." The letter continued, "Please allow him to grow a beard if necessary." Because this letter did not describe the condition as permanent, LeFoumba was asked to submit a new letter in 2019.

Grooming standards because [he] had tapered the beard into a goatee." The Department employee performance log for that date stated,

> On this date, [LeFoumba was] counseled on the fact that [his] beard was in violation of PD-28 Dress and Grooming Standards because [he] had tapered the beard into a goatee. [He] was instructed that [he] must trim [his] beard so that it is compliance with PD-28 by 02/13/2019. [He] was also instructed that [his] shave pass is no longer in compliance since it is dated 1/20/2017. [He] was instructed that a new shave pass is needed in Human Resources and it must be updated every six months. [He was] instructed that this behavior will not be tolerated and that formal disciplinary will follow.

The employee offense and prehearing investigation report by Sergeant Jaclyn Parsonage, dated February 12, 2019, stated that LeFoumba "was observed with his beard tapered into a goatee. He was instructed that he must trim his beard [to be] in compliance with PD-28 by 02/13/2019. He was also instructed that his shave pass was no longer in compliance since it was dated January 20, 2017." The report was signed by LeFoumba on February 13, 2019, with the attached explanation:

> On or around 2/12/19, at about 4:15 p.m. I went into Warden Richard Babcock to ask about my service award for 15 years of service with T.D.C.J. . . . . Before I could even open my mouth to speak, Warden Babcock started yelling at me stating, "why do you have beard on your face, you are out of compliance, you are not suppose[d] to have grown beard on your face." I tried to explain to him that I have a chronic medical condition and a shaving pass from my doctor. He said I should shut up and sit down. At that point he radioed Captain [Derrick Ray] to come to his office right now. When Captain Ray arrived, he ask[ed] him to walk me out of his office and he would write a disciplinary [note] against me and bring it to him. I was harassed, and humiliated by Warden Babcock just for asking about my 15 years [sic] service award with T.D.C.J.

In a second employee offense and prehearing investigation report dated February 19, 2019, Sergeant Oladapo Idris stated that LeFoumba "was observed with his beard tapered into a goatee." The report continued that LeFoumba "was previously instructed that he must trim his beard so that it is in compliance with PD-28 by 02/13/2019. Officer LeFoumba has failed to trim his beard so that it is in compliance with PD-28." LeFoumba signed the report and stated, in an attached interoffice communication, that he had not violated PD-28 grooming standards and that he had showed his shaving pass to his supervisor.

In a third employee offense and prehearing investigation report dated February 20, 2019, Lieutenant Scott Buhlebothando stated that, on February 18, 2019, LeFoumba, "was observed with his beard tapered into a goatee." This report continued, "He was previously instructed that he must trim his beard so that it is in compliance with PD-28 by 02/13/19. Officer LeFoumba had been previously counseled on this violation and he continues to violate PD-28." LeFoumba signed the report and attached an explanation stating that he "presented [his] shaving pass to [his] supervisor as demanded." LeFoumba claimed that he was not told to trim his beard. Instead, he was told to present a shaving pass from his physician.

In a fourth employee offense and prehearing investigation report dated February 21, 2019, Captain Derrick Ray stated that, on February 21, 2019, LeFoumba "was observed with his beard tapered into a goatee." Once again, the report continued, "He was previously instructed that he must trim his beard so that it [complies] with PD-28 by 02/21/2019. Officer LeFoumba has failed to trim his beard so that it is in compliance with PD-28." LeFoumba signed the report and included a statement that he denied all the allegations brought against him, that he complied

5

with the Department's grooming standard, and that he gave Ray his shaving pass when Ray requested it.

In yet a fifth employee offense and prehearing investigation report dated March 1, 2019, Captain Cedric Washington stated that, on March 1, 2019, LeFoumba "was observed with his beard tapered into a goatee." Washington's report similarly continued, "He was previously instructed that he must trim his beard so that it [complies] with PD-28 by 02/13/2019. Officer LeFoumba had been previously counseled on this violation and he continues to violate PD-28." LeFoumba signed the report and again denied all allegations brought against him, stated that he complied with PD-28, and stated that he had shown his medical shaving pass to his superiors. A formal disciplinary hearing for violation of PD-28 ensued on March 18, 2019. At the hearing, LeFoumba "was found guilty by the reprimanding authority, due to his facial hair length being longer than a quarter inch, his face and neck [being] shaved down to the skin and his beard [being] sculpted into a goatee."[4]

LeFoumba explained that he was never told that PD-28 did not permit him to wear a goatee and that, in accordance with his doctor's note, he shaved his beard as was necessary. According to LeFoumba, his doctors advised that he needed to wear a goatee at all times.

Washington took issue with LeFoumba's claim that he was never told that PD-28 did not allow for goatees and testified that he explained as much to LeFoumba. According to Washington, a person with a medical exception is not permitted to grow any kind of facial hair

---

[4]LeFoumba was placed on suspension, and dismissal was recommended. LeFoumba was recommended for dismissal after the third offense, as that was the only option available for a level 2 violation. LeFoumba was dismissed from his employment on May 22, 2019.

they desire. Instead, such a person is permitted to grow only a full-face beard, as he explained to LeFoumba. Although PD-28 allows for mustaches and sideburns, it does not allow for goatees. Washington explained that, while the letter from LeFoumba's physician indicated that he could not shave his neck or face area, it was very clear that LeFoumba shaved those areas in order to sculpt the goatee. Washington also stated that the goatee was more than a quarter of an inch long, which likewise is a violation of PD-28.[5] Washington warned LeFoumba about his noncompliance with PD-28 two to three times, and several other supervisors warned him as well. LeFoumba never indicated that he was willing to comply with PD-28.

Warden Richard Babcock testified that, according to PD-28, "beard" means natural growth facial hair. No shaving or sculpting is permitted under the policy. Babcock explained to LeFoumba that his goatee did not comply with PD-28 because, even though he had a medical pass, that permitted only a quarter-inch beard, not a goatee. LeFoumba shaved his neck and portions of his cheeks, even though his medical pass stated that his chronic condition was worsened by shaving his face and neck. At LeFoumba's disciplinary hearing, Babcock asked him if he understood that he could lose his job by failing to follow PD-28. LeFoumba indicated that, if he let the beard around his goatee grow out, it would bump up. Babcock told him that, if that was the case, he needed to get a doctor's note to that effect. LeFoumba did not produce such a note. LeFoumba was given multiple opportunities to comply with PD-28, and he failed to do

---

[5]This requirement was implemented to ensure that, in the event a gas mask was required, the seal would properly adhere to the face.

so.[6] LeFoumba admitted that he wore a goatee as depicted in photographs taken before his termination and stated that he shaved his neck and cheeks, as depicted in the photographs.

*Standard of Review*

In the trial court, "[t]he applicable standard of review for a [Commission] decision is 'trial de novo based on the substantial evidence rule.'" *Kaup v. Tex. Workforce Comm'n*, 456 S.W.3d 289, 294 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting TEX. LAB. CODE ANN. § 212.202(a)). The Commission's decision "carries a presumption of validity, and the party seeking to set aside the agency's decision has the burden of showing that it was not supported by substantial evidence." *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). The "relevant inquiry is whether reasonable minds could have reached the conclusion reached" by the Commission. *Tex. Workforce Comm'n v. Dental Health for Arlington, Inc.*, 624 S.W.3d 68, 73 (Tex. App.—Amarillo 2021, pet. denied). "Substantial evidence is more than a scintilla and need not be a preponderance." *McCrory v. Henderson*, 431 S.W.3d 140, 142 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Whether the Commission's decision was supported by substantial evidence is a question of law. *Id.* The trial court may set aside the Commission's decision "only if it was made without regard to the law or the facts and, as a result, was unreasonable, arbitrary, or capricious." *Id.* at 143.

Because the determination of whether the Commission's decision was supported by substantial evidence is a question of law, our review of the trial court's determination is de novo.

---

[6]Babcock explained that correctional officers are subject to many regulations, and the grooming policy is the least of them. If an officer cannot follow the grooming policy, there are serious questions about compliance with other regulations. In addition, if inmates think the correctional staff do not follow the rules, they might think they do not have to follow the rules, resulting in a potentially dangerous environment.

*Van Deelen v. Tex. Workforce Comm'n*, No. 14-18-00489-CV, 2021 WL 245483, at \*7 (Tex. App.—Houston [14th Dist.] Jan. 26, 2021, pet. denied) (mem. op.). In our review, we look to the evidence presented in the trial court and do not consider the agency record. *Id.* "Under this standard of review, 'the issue is whether the evidence introduced before the trial court shows facts in existence at the time of the [Commission's] decision that reasonably support the decision.'" *McCrory*, 431 S.W.3d at 143 (quoting *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998)). Stated differently, "we review the trial court's judgment by comparing the [Commission] decision with the evidence presented to the trial court and the governing law." *Van Deelen*, 2021 WL 245483, at \*4.

*Substantial Evidence of Misconduct*

"An individual is disqualified [from receiving unemployment] benefits if the individual was discharged for misconduct connected with the individual's last work." TEX. LAB. CODE ANN. § 207.044(a). "'Misconduct' means mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees." TEX. LAB. CODE ANN. § 201.012(a). The evidence presented to the trial court demonstrated that:

- PD-28 prohibited beards except in the case of appropriate medical documentation of a medically diagnosed skin disorder and a physician had prescribed the growth of minimal facial hair;

- In the case of such exception, PD-28 prohibited facial hair in excess of one-quarter of an inch;

- PD-28 explicitly permitted certain mustaches and sideburns, but did not explicitly permit goatees;

- Sculpting of facial hair was not permitted under the policy;

- Despite the fact that his physician stated that LeFoumba had a chronic condition with ingrown hair on his face and neck made worse by shaving, LeFoumba shaved his neck and his face to sculpt a goatee;

- LeFoumba's goatee was longer than one-quarter of an inch.

- LeFoumba was provided written warning on at least five different occasions that his goatee was not in compliance with PD-28;

- LeFoumba was verbally warned on more than one occasion that his goatee was not in compliance with PD-28;

- LeFoumba failed to obtain medical documentation stating that he needed to wear a goatee;

- Despite the fact that LeFoumba was given numerous opportunities to comply with PD-28, he failed to do so;

- LeFoumba was terminated for his failure to comply with PD-28.

There was, however, conflicting testimony on the issue of whether LeFoumba was aware of a policy violation. Although LeFoumba testified that he was unaware that PD-28 prohibited goatees and that he stated numerous times that he complied with the policy, an employee who—even unintentionally—violates a workplace policy has committed misconduct. *Kaup*, 456 S.W.3d at 295 (citing *Mercer*, 701 S.W.2d at 831; *Jimison v. Tex. Workforce Comm'n*, No. 2-09-127-CV, 2010 WL 851418, at *3 (Tex. App.—Fort Worth Mar. 11, 2010, no pet.) (mem.op.)). It is also true that, while PD-28 did not explicitly permit goatees, it likewise did not explicitly prohibit them by name. Even so, the evidence showed that LeFoumba was advised—both

verbally and in writing—that he was not permitted to wear a goatee pursuant to Department policy.

Yet, the question is not whether there was conflicting evidence before the Commission. Instead, it is whether the denial of benefits was supported by more than a scintilla of evidence. *Olivarez v. Aluminum Corp. of Am. (Rockdale Works)*, 693 S.W.2d 931, 932 (Tex. 1985) (per curiam). "In fact, the evidence may be substantial and yet greatly preponderate the other way." *Id.* (quoting *Lewis v. Metro. Sav. & Loan Ass'n*, 550 S.W.2d 11, 13 (Tex. 1977)); *see also Matthews v. Scott*, 268 S.W.3d 162, 172 (Tex. App—Corpus Christi 2008, no pet.). "Resolution of factual conflicts and ambiguities is the province of the administrative body and it is the aim of the substantial evidence rule to protect that function." *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984).

As stated above, we review the Commission's decision on unemployment benefits de novo to determine whether substantial evidence supports the ruling. *See* TEX. LAB. CODE ANN. § 212.202(a); *McCrory*, 431 S.W.3d at 142. "The substantial evidence threshold we must apply is not a high one, and the existence of contrary evidence in the record does not demonstrate that the Commission decision is unsupported by substantial evidence." *McCrory*, 431 S.W.3d at 145 (citing *Blanchard v. Brazos Forest Prods., L.P.*, 353 S.W.3d 569, 574 (Tex. App.—Fort Worth 2011, pet. denied) (holding substantial evidence supported Commission decision even though there was conflicting evidence in record)).

Viewing the evidence in the light most favorable to the Commission's decision, we conclude that substantial evidence supports the Commission's determination that LeFoumba was

terminated for misconduct. We further cannot say that LeFoumba met his burden to show that the Commission's decision was unreasonable, arbitrary, or capricious. *See Collingsworth*, 988 S.W.2d at 708.

*Findings of Fact and Conclusions of Law*

Even so, LeFoumba maintains that, because the trial court issued findings of fact and conclusions of law that were not made a part of the appellate record, we must presume that the omitted records support the trial court's judgment and affirm its judgment. In support of this assertion, LeFoumba relies on *Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2003) (omitted portions of record presumed to support trial court judgment); *Feldman v. Marks*, 960 S.W.2d 613, 614 (Tex. 1996) (same); and *Mason v. Our Lady Star of the Sea Cath. Church*, 154 S.W.3d 816, 819 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (same). These cases are inapposite because none involve the appeal of a Commission determination regarding payment of unemployment compensation benefits.

Our sister court has determined that, even if requested, "county courts and district courts need not and should not file findings of fact and conclusions of law regarding their decisions on the merits in administrative appeals." *Harris v. Tex. Dep't of Pub. Safety*, No. 14-04-01085-CV, 2005 WL 3359729, at *4 n.5 (Tex. App.—Houston [14th Dist.] Dec. 6, 2005, no pet.) (mem. op.) (citing *Young Chevrolet, Inc. v. Tex. Motor Vehicle Bd.*, 974 S.W.2d 906, 911 n.9 (Tex. App.— Austin 1998, pet. denied); *Madisonville Consol. Indep. Sch. Dist. v. Tex. Emp. Comm'n*, 821 S.W.2d 310, 314 (Tex. App.—Corpus Christi 1991, writ denied)). This is true in the appeal of a Commission decision denying unemployment benefits because findings of fact and conclusions

12

of law in such an appeal "are neither required by the rules of civil procedure nor properly considered by the appellate court." *Galindo v. Tex. Workforce Comm'n*, No. 05-11-01627-CV, 2012 WL 1470153, at *1 (Tex. App.—Dallas Apr. 26, 2012, no pet.) (mem. op.) (trial court's evidentiary hearing conducted for limited purpose of determining whether substantial evidence supported Commission decision). Because the "trial court is presented with a question of law, findings and conclusions have no purpose and will not be considered on appeal." *Id.* (citing *IKB Indus. Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997); *Mercer*, 701 S.W.2d at 831). Because we could not have properly considered the trial court's findings and conclusions in any event, we conclude that this claim lacks merit.

*Conclusion*

Because the Commission's decision was supported by substantial evidence, we reverse the trial court's judgment and render judgment affirming the Commission's decision that LeFoumba is not entitled to benefits.

Josh R. Morriss, III
Chief Justice

Date Submitted:    April 11, 2022
Date Decided:      May 26, 2022